FERGUSON, Circuit Judge:
Amjad Eashai, a Chapter 7 debtor, appeals the Bankruptcy Appellate Panel’s decision [1] which affirmed the bankruptcy court’s judgment in favor of Citibank (South Dakota), N.A. The bankruptcy court found that Eashai’s $22,567.79 in credit card debt owed to Citibank was nondischargeable under 11 U.S.C. § 523(a)(2)(A) because of fraud. On appeal, Eashai claims that the bankruptcy court erred by not requiring Citibank to establish “reliance” as an element of fraud in determining that the debt was non-disehargeable.[2] We have jurisdiction pursuant to 28 U.S.C. § 158(d). We AFFIRM.

I. BACKGROUND

This is not a typical credit card fraud case. This is a case in which a debtor employed a fraudulent scheme of credit card kiting. Am-jad Eashai, the debtor, obtained many personal credit cards while he was employed as a car lease consultant for a bank. In that position, he earned approximately $24,000 a year. In April of 1990, he injured his back and became unemployed. He has not worked steadily since his injury. After the injury, his income was $1,200 per month from disability compensation. At that time his monthly expenses amounted to $3,300, which created a monthly deficit of $2,100.
While Eashai was unemployed, he had twenty-six credit cards. The minimum monthly payments on these cards totalled approximately $2,000. Eashai engaged in a credit card kiting scheme utilizing the credit available to him on his various credit cards to pay for his living expenses and to make the minimum payments on his other credit card accounts, including his Citibank account that is the subject of this litigation.
Citibank issued Eashai a credit card in 1988. From July 1989 to April 1990, Eash-ai’s Citibank card remained at a zero balance except for one charge that was paid in full. However, once Eashai became unemployed in April 1990, he began using his Citibank card. By that time, Eashai’s credit limit was $20,000. Over the course of the next year and through April 1991, Eashai made all of the required minimum monthly payments on the credit card. By May 1991, Eashai reached both his cash advance limit and his credit limit for purchases on his Citibank account. Eashai then stopped making payments on the account.
In October 1991, when Eashai filed his Chapter 7 petition, his credit limit on his Citibank card was $20,000 and his balance, including finance payments, was $22,567.79. At trial Eashai admitted that he was in debt *1086 for approximately $100,000 on his various credit cards. However, Eashai’s schedules filed with the bankruptcy court listed $141,-000 in unsecured debt, primarily from credit cards. Citibank established at trial that Eashai took out cash advances on his Citibank card to maintain current minimum monthly payments on his other credit cards. Eashai also paid for his living expenses with cash advances from his Citibank card. Additionally, he financed a trip to visit his family in Pakistan and a $1,000 gambling spree in Las Vegas on his Citibank card. Finally, Eashai used his Citibank card to invest $10,-000 in gold bars, which he later sold at a loss for $6,500.
On October 18, 1991, Eashai filed his voluntary petition under Chapter 7 of the Bankruptcy Code in the Bankruptcy Court for the Central District of California. Citibank filed a complaint in the bankruptcy court on January 21, 1992, seeking a determination that Eashai’s debt to Citibank was nondischargeable. After a bench trial, the bankruptcy court found the credit card debt to be nondis-chargeable under 11 U.S.C. 523(a)(2)(A) and entered, a judgment for Citibank in the amount of $22,567.79.
Eashai appealed the bankruptcy court’s decision to the Bankruptcy Appellate Panel of the Ninth Circuit. The Bankruptcy Appellate Panel heard oral argument on the matter and rendered a published opinion affirming the district court. See In re Eashai, 167 B.R. 181 (9th Cir. BAP 1994). Eashai brings this timely appeal.
Eashai challenges the legal standard applied by the bankruptcy court in its determination that Eashai’s debt to Citibank was nondischargeable because of actual fraud. Eashai contends that a creditor must show reliance as an element of actual fraud for a credit card debt to be excepted from discharge. This is a question of first impression in the Ninth Circuit.

II. DISCUSSION

A. Standard of Review
Decisions of the Bankruptcy Appellate Panel are reviewed de novo. Steelcase Inc. v. Johnston (In re Johnston), 21 F.3d 323, 326 (9th Cir.1994). This court independently reviews the bankruptcy court’s rulings on appeal from the Bankruptcy Appellate Panel. The bankruptcy court’s conclusions of law are reviewed de novo, while its factual findings are reviewed for clear error. Id.
B. The Basics Under 11 U.S.C. § 523(a)(2)(A)
In bankruptcy some debts are nondis-chargeable. Section 523 of the Bankruptcy Code provides in relevant part:
(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—
[[Image here]]
(2)for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by—
(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor’s or an insider’s financial condition.
11 U.S.C. § 523(a)(2)(A) (emphasis added). This exception to discharge furthers the policy that an honest but unfortunate debtor obtains a fresh start while a dishonest debtor does not benefit from his wrongdoing. Grogan v. Garner, 498 U.S. 279, 286-87, 111 S.Ct. 654, 659-60, 112 L.Ed.2d 755 (1991).
In the Ninth Circuit, to prove actual fraud, a creditor must establish each of the following elements:
(1) [that] the debtor made the representations;
(2) that at the time he knew they were false;
(3) that he made them with the intention and purpose of deceiving the creditor;
(4) that the creditor relied on such representations; [and]
(5) that the creditor sustained the alleged loss and damage as the proximate result of the representations having been made.
Britton v. Price (In re Britton), 950 F.2d 602, 604 (9th Cir.1991); Eugene Parks Law Corp. Defined Benefit Pension Plan v. Kirsh (In re Kirsh), 973 F.2d 1454, 1457 (9th Cir.1992). The creditor must prove each ele *1087 ment of fraud by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 290, 111 S.Ct. 654, 661, 112 L.Ed.2d 755 (1991). Recently, in Field v. Mans, — U.S. -, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), the Supreme Court determined that when Congress used the term “actual fraud” in § 523(a)(2)(A), Congress was referring to the general common law of torts.[3] Id. at-n. 9, 116 S.Ct. at 443 n. 9. Thus, the Supreme Courtis interpretation of the term “actual fraud” reaffirms the Ninth Circuit’s practice of using the common law elements of fraud in exception to discharge cases.
C. Applying 11 U.S.C. § 523(a)(2)(A) to Credit Card Cases
.. Many courts have acknowledged that credit card debts are different from other types of debts which are discharged for fraud. See, e.g., First Nat’l Bank v. Roddenberry, 701 F.2d 927, 931 (11th Cir.1983); Citibank, S.D., N.A. v. Dougherty (In re Dougherty), 84 B.R. 653, 655-56 (9th Cir. BAP 1988); Nordstrom, Inc. v. Borste (In re Borste), 117 B.R. 995, 996 (Bankr.W.D.Wash.1990). Traditional credit transactions are two-party transactions between the debtor and the creditor. In contrast, credit card transactions involve' three-parties: 1) the debt- or/card holder; 2) the creditor/eard issuer; and 3) the merchant who honors the credit card. The difficulty in credit card cases is for the creditor, who does not deal face-to-face with the debtor, to prove the elements of misrepresentation and reliance. .
In applying the common law elements of fraud to credit card cases, courts generally follow one of three legal theories. Hecht’s, A Division of the May Dep’t Stores Co. v. Valdes (In re Valdes), 188 B.R. 533, 535-37 (Bankr.D.Md.1995). The majority approach is the- “implied representation” theory. Chase Manhattan Bank, N.A v. Ford (Matter of Ford), 186 B.R. 312, 318 (Bankr. N.D.Ga.1995). According to this theory, a credit card holder impliedly represents, upon using the credit card, that he has the ability and intention to pay for the goods or services.' Sears Roebuck & Co. v. Faulk (In re Faulk), 69 B.R. 743, 752 (Bankr.N.D.Ind. 1986).
The minority approach is the “assumption of the risk” theory. First Nat’l Bank v. Roddenberry, 701 F.2d 927, 932-33 (11th Cir.1983). According to this approach, a card holder makes a false representation to the issuer only when revocation of the card is communicated to the card holder and the card holder continues to use the card. Thus, only charges made after the revocation of the card are nondischargeable under § 523(a)(2)(A).
The third approach, sometimes called the “totality of the circumstances” theory, was established in In re Faulk, 69 B.R. 743, 757 (Bankr.N.D.Ind.1986), and adopted by the Ninth Circuit Bankruptcy Appellate Panel in In re Dougherty, 84 B.R. 653 (9th Cir. BAP 1988). Under this theory, a court may infer the existence of the debtor’s intent not to pay if the facts and circumstances of a particular case present a picture of deceptive conduct by the debtor. In re Faulk, 69 B.R. at 755. In Dougherty the Bankruptcy Appellate Panel for the Ninth Circuit set out twelve nonexclusive factors to be considered in determining the debtor’s intent. These factors are:
1. The length of time between the charges made and the filing of bankruptcy;
2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. The number of charges made;
4. The amount of the charges;
*1088 5. The financial condition of the debtor at the time the charges are made;
6. Whether the charges were above the credit limit of the account;
7. Whether the debtor made multiple charges on the same day;
8. Whether or not the debtor was employed;
9. The debtor’s prospects for employment;
10. Financial sophistication of the debtor;
11. Whether there was a sudden change in the debtor’s buying habits; and
12. Whether the purchases were made for luxuries or necessities.
In re Dougherty, 84 B.R. at 657 (citing In re Faulk, 69 B.R. 743, 757 (Bankr.N.D.Ind. 1986)). Under this approach, the bankruptcy court must consider these factors to determine whether the debt was incurred through actual fraud, i.e., where the debtor made the charges with no intention of paying for the goods or services. In re Dougherty, 84 B.R. at 657.
In adopting this twelve factor test for credit card cases, the Bankruptcy Appellate Panel in Dougherty acknowledged the inadequacies of both the implied representation theory and the assumption of the risk theory. Id. at 656-57. Since Dougherty, other courts have also rejected the assumption of the risk and implied representation theories and have followed the twelve factor test.[4] However, Dougherty has also been criticized because it does not consider all of the common law elements of fraud, particularly, misrepresentation and reliance.[5]
D. Applying 11 U.S.C. 523(a)(2)(A) to Credit Card Kiting
In the present case, the bankruptcy court applied the twelve factor approach set out in Dougherty. On appeal, the crux of the debt- or’s argument is that the Dougherty factors are not the proper standard for determining nondischargeability under 11 U.S.C. § 523(a)(2)(A) because the Dougherty factors do not address the creditor’s reliance.
We incorporate the twelve factors of Dougherty into an approach which gives consideration to all of the elements of common law fraud. We adopt the twelve factors of Dougherty to establish the element of intent to deceive. However, a creditor in a credit card kiting case must also prove the other elements of common law fraud, including a false representation, justifiable reliance, and damages.
Our approach addresses the fraudulent nature of credit card kiting which clearly falls within the actual fraud exception to discharge. A debtor who uses cash advances on one credit card to make the minimum payments on another credit card and has no intention to pay for the money, property or services received, engages in credit card kiting.
1. False Representation
In the case of credit card kiting, the debtor makes a false representation: 1) by creating the facade that all of his accounts are in good standing; and 2) by failing to disclose to the creditor his intent not to pay his credit card debt. This facade gives the debtor the appearance of an honest debtor, who is servicing his credit card debt in a timely manner by making minimum payments each month. Thus, the kiting scheme enables a dishonest debtor to hide his fraudulent intentions and engage in a spending spree which results in increasing amounts of credit card debt. Long before there were credit cards, the Supreme Court recognized *1089 that it is fraud when “a party not intending to pay ... induces the owner to sell him goods on credit by fraudulently concealing his insolvency and his intent not to pay for them_” Donaldson v. Farwell, 93 U.S. 631, 633, 23 L.Ed. 993 (1876) (emphasis added).
The credit card kiter conceals his wrongful intent and fails to disclose to the creditor that he has no intention of paying his debt. Under common law, a false representation can be established by an omission when there is a duty to disclose. The Restatement (Second) of Torts § 551 discusses liability for nondisclosure:[6]
(1) One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.
(2) One party to a business transaction is under a duty to exercise reasonable care to disclose to the other before the transaction is consummated, ...
(c) subsequently acquired information that he knows will make untrue or misleading a previous representation that when made was true or believed to be so;....
Restatement (Second) of Torts § 551 (1976). It follows that a credit card kiter has a duty to disclose his intention not to pay because he previously represented to the card issuer his intention to pay for charges incurred on the credit card.
Two Circuits have recognized in the bankruptcy context that an omission can satisfy the misrepresentation element of actual fraud.
Actual fraud, by definition, consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another— something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.
RecoverEdge L.P. v. Pentecost, 44 F.3d 1284, 1293 (5th Cir.1995) (citing 3 Collier on Bankruptcy ¶ 523.08[5] (Lawrence P. King et al. eds., 14th ed. 1994)); Caspers v. Van Home (Matter of Van Home), 823 F.2d 1285, 1288 (8th Cir.1987), abrogated on other grounds, Grogan v. Gamer, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). But see Schweig v. Hunter (In re Hunter), 780 F.2d 1577 (11th Cir.1986) (holding that debt was dischargeable because representations regarding the financial condition of the debtor must be explicit). Moreover, bankruptcy courts have conceded that a debtor’s silence or omission regarding a material fact can constitute a false representation which is actionable under § 523(a)(2)(A). See Cooke v. Howarter (In re Howarter), 114 B.R. 682, 684 n. 2 (9th Cir. BAP 1990) (noting that the debtor’s silence or concealment of a material fact can create a false impression which constitutes a misrepresentation actionable under § 523(a)(2)(A)); see also Trizna & Lepri v. Malcolm (In re Malcolm), 145 B.R. 259, 263 (Bankr.N.D.Ill.1992) (stating that “when the circumstances imply a particular set of facts, and one party knows the facts to be otherwise, that party may have a duty to correct what would otherwise be a false impression”).
An omission gives rise to liability for fraud only when there is a duty to disclose. In a credit card kiting case, the debtor’s duty to disclose is triggered by the debtor’s creation of a facade which conceals his fraudulent intentions. When a debtor, with intent to defraud the creditor, makes minimum payments with cash advances from other credit cards, the debtor has a duty to disclose to the creditor that he no longer intends to pay his credit card debt. If the debtor fails to make this disclosure, then he commits actual fraud.
Clearly, it is not actual fraud simply to make a minimum payment with a cash advance from another credit card. This ac *1090 tion on the part of the debtor must also be coupled with a lack of intent to repay the debt. The admonition of the Bankruptcy Appellate Panel in Karelin v. Bank of America Nat’l Trust & Sav. Ass’n (In re Karelin), 109 B.R. 943 (9th Cir. BAP 1990), is instructive:
Care must be taken to stop short of a rule that would make every desperate, financially strapped debtor a guarantor of his ability to repay, on pain of nondischarge-ability. Such a rule would unduly expand the “actual fraud” discharge exception by attenuating the intent requirement. A substantial number of bankruptcy debtors incur debts with hopes of repaying them that could be considered unrealistic in hindsight. This by itself does not constitute fraudulent conduct warranting nondis-charge.
Id. 947-48. In hard financial times, people may engage in the practice of using cash advances to solve their short-term cash flow problems or to deal with sporadic and seasonal income. See Citibank (N.Y.State) v. Davis (In re Davis), 176 B.R. 118 (Bankr.W.D.N.Y.1994). Moreover, we recognize the fragility of human nature. “[H]uman experience tells us debtors can be unreasonably optimistic despite their financial circumstances.” In re Cox, 182 B.R. 626, 635 (Bankr.D.Mass.1995). Nonetheless, a credit card kiter is easily distinguishable from a bad luck debtor. A credit card kiter manipulates the credit card system to gain money, property, and services with no intention of ever paying for them.
2. Intent to Deceive
The most important element in establishing a kiting scheme is intent to deceive. Although a creditor must establish all of the elements of actual fraud, proof of intent to deceive should be the focal point of the analysis in a credit card kiting case. We adopt the twelve Dougherty factors to establish intent to deceive. See In re Dougherty, 84 B.R. 653, 657 (9th Cir.BAP 1988). Since a debtor will rarely admit to his fraudulent intentions, the creditor must rely on the twelve factors of Dougherty to establish the subjective intent of the debtor through circumstantial evidence.
3. Justifiable Reliance
The Supreme Court recently held that a creditor’s reliance on a debtor’s misrepresentation need be only justifiable, not reasonable, to except a debt from discharge under § 523(a)(2)(A) of the Bankruptcy Code. Field v. Mans, — U.S.-,-, 116 S.Ct. 437, 439, 133 L.Ed.2d 351 (1995). The Court explained that the general understanding of fraud, as expressed in the Restatement (Second) of Torts and by legal scholars, favors a justifiable reliance standard, which turns on a person’s knowledge under the particular circumstances. “Justification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.” Id. at-, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts § 545A cmt. b (1976)). “The Restatement expounds upon justifiable reliance by explaining that a person is justified in relying on a representation of fact ‘although he might have ascertained the falsity of the representation had he made an investigation.’ ” Id. at-, 116 S.Ct. at 444 (quoting Restatement (Second) of Torts § 540 (1976)).
Prior to the Supreme Court’s decision in Field v. Mans, the Ninth Circuit repeatedly held that creditors must prove “justifiable reliance” in exception to discharge eases. See In re Kirsh, 973 F.2d 1454, 1458-1460 (9th Cir.1992). In Romesh Japra, M.D., F.A.C.C., Inc. v. Apte (In re Apte), 180 B.R. 223 (9th Cir. BAP 1995), the Bankruptcy Appellate Panel explained the meaning of justifiable reliance:
The general rule is that a person may justifiably rely on a representation even if the falsity of the representation could have been ascertained upon investigation. In other words, negligence in failing to discover an intentional misrepresentation is no defense. However, a person cannot rely on a representation if he knows that it is false or its falsity is obvious to him. In sum, although a person ordinarily has no duty to investigate the truth of a representation, a person cannot purport to rely on *1091 preposterous representations or close his eyes to avoid discovery of the truth.
Id. at 229 (internal citations and quotations omitted).
The issue in this case is how a creditor establishes justifiable reliance when the debt- or employs a kiting scheme. In a kiting case, the creditor continues to extend credit to the debtor in reliance on the fact that the debtor’s credit card account is not in default. In some instances, the creditor may initially rely on the debtor’s credit report (before issuing the credit card) which shows that the debtor has a history of servicing his credit card debt in a timely manner. The debtor, who is kiting his credit cards, creates the illusion that he intends to pay his credit card debts and honor his credit agreements. Presumably, if the creditor knew the true state of the debtor’s financial affairs and intentions, the creditor would revoke the debtor’s credit card or deny the debtor’s request for a credit card. Thus, by kiting, the debtor induces the creditor to refrain from action in reliance on the appearance of the debtor’s intent to repay.
If the creditor had warning that the debtor’s account was in danger of default, the creditor will not be able to establish justifiable reliance. We will not allow a creditor, who has been put on notice of the debtor’s intent not to repay, to extend credit and then later claim nondischargeability on the basis of fraud. Unfortunately, the true deceit of kiting is that by making minimum payments the debtor almost guarantees that his account will never raise a red flag.
E. Application to this Case
In the ease at bar, the bankruptcy court found that Eashai engaged in a scheme of credit card kiting. Citibank presented evidence that Eashai used cash advances to make his minimum monthly payments, which added up to $2,000 per month for all of his credit cards. The Bankruptcy Appellate Panel accurately described Eashai’s scheme as follows:
Citibank’s placement at the tail end of the kiting scheme demonstrated that debtor had no intention to repay his debt to Citibank when he availed himself of its line of credit, but rather, that debtor prospectively intended to escape his debt through bankruptcy.
In re Eashai, 167 B.R. 181, 186 (9th Cir.BAP 1994).
The bankruptcy court applied the twelve Dougherty factors and held that Eashai had no intent to repay his credit card debt. On the record before us, Eashai’s intent to defraud can be inferred from the following facts which Citibank established at trial: 1) Eashai exhausted his Citibank credit line in May, 1991, he immediately stopped making payments, and then filed bankruptcy in October, 1991; 2) Eashai’s monthly expenses exceeded his monthly income by $2,100; 3) Eashai worked at odd jobs during the time he incurred the charges and had no immediate prospect of full-time employment; 4) Eashai had been employed by a bank as a car lease consultant and was financially sophisticated; 5) Eashai’s spending habits changed dramatically in the spring of 1990; and 6) Eashai used his credit for speculative purposes such as gambling and purchasing gold bars. The bankruptcy court found no credibility in Eashai’s allegation that he was unaware of the effect of a discharge in bankruptcy. These facts serve to establish that Eashai intended to defraud Citibank.
Citibank was justified in continuing to extend credit to Eashai. From 1988 through April 1991, Eashai made the minimum monthly payments on his credit card account. He was able to make the payments by cash advances from other credit cards. He exhausted the $20,000 credit limit on the account in May, 1991. Once the credit line was spent, Eashai made no further payments on the account. Citibank had no notice or warning that Eashai did not intend to repay the debt which he incurred. In its extension of credit to Eashai, Citibank justifiably relied on E'ashai’s apparent good faith use of his credit card.
In sum, Citibank established all of the elements of actual fraud: 1) that Eashai made a false representation; 2) that Eashai had intent to deceive; 3) that Citibank justifiably relied on Eashai’s false representation; *1092 and 4) that Citibank was damaged in the amount of $22,567.79.
F. 11 U.S.C. § 523(a)(2)(C)
Congress has attempted to curb the abuse of the Bankruptcy Code by debtors who engage in credit card fraud. In 1984, Congress enacted 11 U.S.C. § 523(a)(2)(C) to address the problem of the debtor who goes on a spending spree by charging the limits on his credit cards and then requests discharge of this credit card debt in bankruptcy. Section 523(a)(2)(C) provides:
(C) for purposes of subparagraph (A) of this paragraph [11 U.S.C. § 523(a)(2)(A) ], consumer debts owed to a single creditor and aggregating more than $500 for “luxury goods or services” incurred by an individual debtor on or within forty days before the order for relief under this title, or cash advances aggregating more than $1,000 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within twenty days before the order for relief under this title, are presumed to be non-dischargeable ....
11 U.S.C. § 523(a)(2)(C) (1984). Thus, § 523(a)(2)(C) eases the creditor’s burden of proof by creating a rebuttable presumption of nondischargeability. The legislative intent of § 523(a)(2)(C) is clear:
Excessive debts incurred within a short period prior to the filing of the petition present a special problem: that of “loading up” in contemplation of bankruptcy. A debtor planning a[sie] file a petition with the bankruptcy court has a strong economic incentive to incur dischargeable debts for either consumable goods or exempt property. In many instances, the debtor will go on a credit buying spree in contemplation of bankruptcy at a time when the debtor is, in fact, insolvent. Not only does this result in direct losses for the creditors that are the victims of the spree, but it also creates a higher absolute level of debt so that all creditors receive less in liquidation.
During this period of insolvency preceding the filing of the petition, creditors would not extend credit if they knew the true facts.
S.Rep. No. 65, 98th Cong., 1st Sess. 9 (1983). See 11 U.S.C. § 523(a)(2)(C) (1984). In the face of persisting credit card fraud, Congress recently augmented the statute by extending the window of nondischargeability to sixty days. Bankruptcy Reform Act of 1994, Pub.L. No. 103-394, § 306, 108 Stat. 4106, 4135 (1994). Unfortunately, the statute fails to address credit card fraud when it is perpetrated by a scheme of credit card kiting.
In the present case, Citibank did not get the benefit of the presumption created by § 523(a)(2)(C) because Eashai exhausted the credit line on his Citibank card several months before he filed bankruptcy. Eashai was able to delay the inevitable — filing bankruptcy — because he had multiple credit cards. In a credit card kiting case, the creditor will never get the benefit of this presumption of nondischargeability. By using a credit card kiting scheme a clever debtor can avoid the statute’s presumption by manipulating the timing of his fraudulent transactions. Therefore, the credit card kiter effectively eviscerates the statute and the intent of Congress.

CONCLUSION

In sum, the debtor’s credit card kiting constitutes actual fraud. Thus, the debt owed to Citibank is nondischargeable. The Bankruptcy Appellate Panel’s decision affirming the bankruptcy court’s order is AFFIRMED.

. The Bankruptcy Appellate Panel's decision is published at Eashai v. Citibank, S.D., N.A. (In re Eashai), 167 B.R. 181 (9th Cir. BAP 1994).

. Eashai did not raise this issue at trial. The general rule is that an appellant's failure to raise an objection at trial will ordinarily foreclose him from raising that issue on appeal. Telco Leasing, Inc. v. Transwestem Title Co., 630 F.2d 691, 693 (9th Cir. 1980) (citing Singleton v. Wulff, 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976)). However, the rule of waiver is one of discretion rather than appellate jurisdiction. Id. We can exercise our discretion to consider a waived issue when the issue presented is a pure question of law. Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 912 (9th Cir.1995); Everett v. Perez (In re Perez), 30 F.3d 1209, 1214 (9th Cir.1994). The issue of whether a creditor must prove "reliance” is a purely legal issue. Therefore, we address this issue.

. To discern the meaning of "actual fraud”, the Court looked to the Restatement (Second) of Torts (1976), which was published shortly before the enactment of the 1978 Bankruptcy Reform Act. Field, -U.S. at--, 116 S.Ct. at 443-44. The Restatement (Second) of Torts defines fraudulent misrepresentation as follows:
One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.
Restatement (Second) of Torts § 525 (1976).

. See, e.g., General Electric Capitol Consumer Card Co. v. Janecek (Matter of Janecek), 183 B.R. 571, 574 (Bankr.D.Neb.1995); American Express Travel Related Servs. Co. v. Nahas (In re Nahas), 181 B.R. 930, 933-34 (Bankr.S.D.Ind.1994); Citibank, N.A. v. Wiener (In re Wiener), 144 B.R. 17, 20-21 (Bankr.E.D.N.Y.1992); Idaho First Nat’l Bank, N.A. v. LeMaster (In re LeMaster), 142 B.R. 927, 929 (Bankr.D.Idaho 1992); American Express Travel Related Servs. Co. v. Johnson (In re Johnson), 141 B.R. 473, 478 (Bankr.M.D.Ga. 1992); Chase Manhattan Bank v. Weiss (In re Weiss), 139 B.R. 928, 930 (Bankr.D.S.D.1992); Seattle First Nat’l Bank v. Marusic (In re Marusic), 139 B.R. 727, 733 (Bankr.W.D.Wash.1992); Citicorp Credit Servs., Inc. v. Hinman (In re Hinman), 120 B.R. 1018, 1021 (Bankr.D.N.D.1990).

. See The GM Card v. Cox (In re Cox), 182 B.R. 626, 637 (Bankr.D.Mass.1995).

. In Field v. Mans,-U.S.-, 116 S.Ct. 437, 133 L.Ed.2d 351, the Supreme Court relied on the Restatement (Second) of Torts and other treatises to determine the meaning of the actual fraud exception. Id. at-, 116 S.Ct. at 443-44. This mode of analysis is instructive as we determine the application of the actual fraud exception to credit card cases.