UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

In Re: JAMES W. HARRELL; In Re:
GLORIA E. HARRELL,
Debtors.

JAMES W. HARRELL; GLORIA E.
HARRELL,                                                      No. 98-1728
Plaintiffs-Appellees,

v.

MERCHANT'S EXPRESS MONEY ORDER
COMPANY,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge.
(CA-97-971-2, BK-96-26022-S, AP-97-2001-S)

Submitted: February 19, 1999

Decided: March 19, 1999

Before ERVIN, LUTTIG, and WILLIAMS, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Steven L. Brown, TOLERTON & BROWN, P.C., Norfolk, Virginia,
for Appellant. Jonathan L. Hauser, CHRISTIAN & BARTON, L.L.P.,
Norfolk, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Merchant's Express Money Order Co. (MEMO) appeals from the district court's order affirming in part and reversing in part the bankruptcy court's order determining the dischargeability of a debt owed by the Harrells to MEMO. For the reasons that follow, we affirm.

James and Gloria Harrell were officers and directors of K.R.B., Inc., a Virginia corporation that owned and operated several grocery and convenience stores in the Hampton Roads, Virginia, area. The Harrells were also K.R.B.'s sole shareholders until just prior to filing bankruptcy. In October 1995, K.R.B. and MEMO entered into a contract in which K.R.B. agreed to sell, for a fee, MEMO's money orders in its stores, and MEMO agreed to provide all the necessary supplies. The agreement required K.R.B. to maintain a separate account for the money collected from money orders sold and to turn over the funds each week to MEMO. It is undisputed that K.R.B. never maintained a separate account for the money order proceeds.

In March and April 1996, K.R.B. failed to turn over approximately $120,000 in money collected from sold money orders. [1] The Harrells personally guaranteed K.R.B.'s obligations to MEMO. [2] K.R.B. filed a petition under Chapter 11 of the bankruptcy code in July 1996; the Harrells filed under Chapter 7 in September.

_____

[1] The exact amount that K.R.B. failed to pay is less than clear from the record. In June 1996, K.R.B. confessed judgment in Virginia state court in the amount of $123,319.73 plus costs of $12,331.97. On their bankruptcy petition, the Harrells listed an unsecured nonpriority claim of $117,000 owed to MEMO.

[2] In May 1996, Mr. Harrell, on behalf of K.R.B. and individually, executed an acknowledgment in which he agreed that a balance of $134,729.73 was owed to MEMO. Further complicating matters, the amount claimed in MEMO's complaint was $132,231.23.

2

MEMO filed a three-count complaint against the Harrells to determine the dischargeability of the debt. Count I asserted that the debt was nondischargeable under 11 U.S.C. § 523(a)(2)(A) (1994), because the Harrells had obtained the funds by false pretenses. Count II alleged that the debt was nondischargeable under 11 U.S.C. § 523(a)(4) (1994), due to the Harrells' fraud and defalcation while acting in a fiduciary capacity. Count III alleged that the debt was non-dischargeable under 11 U.S.C. § 523(a)(6) (1994), as a result of the Harrells' willful and malicious injury to MEMO.

The bankruptcy court dismissed Count I. After a hearing, the court then found that MEMO failed to show by a preponderance of the evidence that either debtor committed willful and malicious injury (Count III). As to Count II, the bankruptcy court found that (1) a fiduciary relationship was created notwithstanding the commingling of funds, and (2) the debtors committed a defalcation. However, the bankruptcy court held only Mr. Harrell liable for the corporation's indebtedness to MEMO and not Mrs. Harrell. Both parties appealed to the district court which affirmed the bankruptcy court's decision as to Counts I and II but reversed its ruling on Count III as to Mr. Harrell only. MEMO appeals.

We review the judgment of the district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court. See Cook Group v. C.R. Bard, Inc. (In re Wilson), 149 F.3d 249, 251-52 (4th Cir. 1998). The bankruptcy court's findings of fact will not be set aside unless clearly erroneous. See In re Johnson, 960 F.2d 396, 399 (4th Cir. 1992); Bankr. R. 8013. Our review of the bankruptcy court's application of the law is de novo. See Johnson, 960 F.2d at 399.

To prove that a debt is nondischargeable, the creditor bears the burden of proof by a preponderance of the evidence. See Grogan v. Garner, 498 U.S. 279, 287 (1991). Section 523(a)(2)(A) states, in part, that a bankruptcy discharge does not discharge an individual debtor from "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." To sustain a claim under § 523(a)(2)(A), the creditor must show, by a preponderance of the evidence, that the debtor made misrepresentations, with

3

the intention and purpose of deceiving or defrauding the creditor, that the creditor relied on the misrepresentations, and that it sustained a loss as a proximate result of the misrepresentations or fraud. See In re Eashai, 87 F.3d 1082, 1086 (9th Cir. 1996). Both the bankruptcy court and the district court concluded that MEMO failed to prove the elements necessary to sustain its claim in Count I. We agree. MEMO failed to show either that the Harrells knew at the time they promised to pay MEMO the money order proceeds (i.e., at the time the agreement was executed) that the promise was false or that they made that representation with the intent to deceive MEMO. Accordingly, we affirm the dismissal of Count I.

Section 523(a)(6) excepts from discharge any debt for "willful and malicious injury by the debtor to another entity or to the property of another entity." In the context of § 523(a)(6), "willful" means "deliberate or intentional." Kawaauhau v. Geiger , 118 S.Ct. 974, 977 n.3 (1998); see also St. Paul Fire & Marine Ins. Co. v. Vaughn, 779 F.2d 1003, 1009 (4th Cir. 1985). "Malice" does not require a showing of ill will; rather, "a debtor's injurious act done`deliberately and intentionally in knowing disregard of the rights of another,' i.e., a creditor, is sufficiently willful and malicious, and prevents discharge of the debt." In re Stanley, 66 F.3d 664, 667 (4th Cir. 1995). Further, malice may be implied from the debtor's conduct. See id. Finally, the "proper focus . . . is not on [debtor's] good intentions, but simply on his exercise of dominion and control over funds that he knew belonged to another." Id. at 668.

The bankruptcy court found that MEMO failed to prove that the debt arose from the Harrells' willful and malicious injury. Specifically, the court found that MEMO failed to prove that the Harrells intended to harm MEMO and that "there is no evidence before the Court that the debtors' conduct rose to the level in which they intentionally disregarded the rights of MEMO." With respect to Mrs. Harrell, the district court agreed with the bankruptcy court's finding that she did not commit willful and malicious injury. We agree. The evidence established that, although Mrs. Harrell worked full-time in the family business and drew a $300 weekly salary, it was Mr. Harrell who made the key business decisions--including the decision not to

4

pay MEMO--and that Mrs. Harrell acted under her husband's direction.**3**

Section 523(a)(4) provides that any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" is not discharged in bankruptcy. This section "`was intended to reach those debts incurred through abuses of fiduciary positions.'" Miller v. J.D. Abrams, Inc. (In re Miller), 156 F.3d 598, 602 (5th Cir. 1998) (quoting In re Boyle, 819 F.2d 583, 588 (5th Cir. 1987)). The definition of "fiduciary" for purposes of § 523(a)(4) is controlled by federal common law and is narrower than under general common law. See id. Under this section, a fiduciary is limited to instances involving express or technical trusts. See id. The trustee's obligations must have been imposed prior to, rather than by virtue of, any claimed misappropriation of funds; "[c]onstructive trusts or trusts ex malificio thus . . . fall short of the requirements of § 523(a)(4)." Tran v. Texas Lottery Commission (In re Tran), 151 F.3d 339, 342 (5th Cir. 1998). Again, MEMO bore the burden of proof on this claim. See Grogan v. Garner, 498 U.S. at 286-90.

Both the bankruptcy court and the district court concluded that Mrs. Harrell was not acting in a fiduciary capacity with respect to MEMO. We agree. The evidence presented by MEMO failed to establish that Mrs. Harrell's relationship with MEMO rose to the level of a trustee. Because we find that no fiduciary relationship existed between Mrs. Harrell and MEMO, we need not reach the issue of whether failure to turn over the funds to MEMO constituted a defalcation.

Accordingly, we affirm the district court's order affirming in part and reversing in part the bankruptcy court's decision regarding the dischargeability of the debt at issue.**4**

AFFIRMED

_____

**3** The Harrells have not appealed from the district court's finding that Mr. Harrell caused willful and malicious injury. Accordingly, we need not address the application of § 523(a)(6) to Mr. Harrell.
**4** On October 8, 1998, this court granted the joint motion of the parties to submit this case for decision on the briefs without oral argument.

5