**In re Janet MORROW & Jimmy Morrow, Debtors.**

**FIA Card Services, N.A., Plaintiff,**

v.

**Janet Morrow, Defendant.**

**Bankruptcy No. 12–60733.
Adversary No. 12–05373–JRS.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 4, 2012.

---

**33.** *Turner v. Phoenix Fin., LLC (In re Imageset, Inc.)*, 299 B.R. 709, 718 (Bankr.D.Me.2003) (citing *Bonded Fin. Servs.*, 838 F.2d at 896).

**34.** *Mack v. Newton*, 737 F.2d at 1360.

Elizabeth H. Parrott, Nashville, TN, for Plaintiff.

Walter W. Furlong, Law Office of Walter W. Furlong, Atlanta, GA, for Defendant.

## ORDER

JAMES R. SACCA, Bankruptcy Judge.

Janet Morrow filed a petition for relief under Chapter 7 of the Bankruptcy Code with her husband ("Debtors") on April 27, 2012. On July 27, 2012, FIA Card Services, N.A. ("FIA" or "Plaintiff") filed a complaint commencing the instant adversary proceeding which alleged that its claim against her was nondischargeable pursuant to § 523(a)(2) [1] because she allegedly obtained credit fraudulently. [Doc. 1]. She responded with a Motion to Dis-

---

1. All Code citations herein refer to the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et* *seq.*

miss (the "Motion") [Doc. 5], wherein she argued that this adversary proceeding should be dismissed because (1) FIA failed to join a necessary party, and (2) FIA failed to state a claim upon which relief can be granted.

## Background

Janet Morrow had a credit card account with Bank of America. She allegedly accumulated $12,263.00 in retail charges between November 9, 2011 and January 23, 2012. (Compl. ¶ 8). Plaintiff alleges that several of these charges relate to some form of cosmetic surgery. *Id.* Plaintiff further alleges that Morrow obtained her certificate of credit counseling less than a month after making the last charge on this account. (Compl. ¶ 3). She then signed her bankruptcy petition about a month later. Another month passed, and just over three months after making the last charge on this account, Morrow and her husband filed this bankruptcy case.

According to the Complaint, her account balance as of filing was $21,590.69. (Compl.¶ 7). This amount allegedly exceeded her account limit. (Compl. ¶ 10). Debtors also scheduled $55,817.19 of general unsecured debt, and Plaintiff alleges that $55,032.19 of this amount is credit card debt incurred on seven credit cards that appear to have been used in 2011. (Compl. ¶ 12). The Debtors' schedules indicate that at the time of filing, their monthly expenses exceeded their income by $1,043.00. Plaintiff alleges that if minimum credit card payments on all of their cards were included, Debtors' monthly budget would have a bottom line of negative $2,693.97. (Compl. ¶ 14). According to their statement of financial affairs, Debtors had gross income in 2011 of only $7,008.00. Plaintiff alleges that the charges on Morrow's Bank of America account come to 175% of Debtors' income for 2011 and that her total credit card debt

was 7.85 times Debtors' income that year. (Compl. ¶ 19–20). Plaintiff also alleges that because of Debtors' high credit card balances relative to their income, payments on these accounts "could only have come from another credit card." (Compl. ¶ 21). Plaintiff further alleges that these alleged payments from one card to another were part of a "credit card kiting scheme" whereby the Debtors concealed their "true financial circumstances" from their creditors. (Compl. ¶ 24).

## I. Joinder of Necessary Party

In the Motion, Morrow argues that FIA does not have standing to bring this action because although she had an account with Bank of America, she did not have an account with FIA. [Doc. 5]. In response, FIA submitted a certification from its Assistant Secretary, Connie B. Smith, asserting that on October 20, 2006, Bank of America, N.A. merged into and under the charter and title of FIA. [Doc. 6 Ex. 1]. Based on this record, it appears that FIA has standing and need not join its subsidiary. Accordingly, to the extent that Morrow seeks to dismiss this case for failure to join a necessary party, the Motion is denied.

## II. Failure to State a Claim

Morrow also asks this Court to dismiss this adversary proceeding because, as she sees it, Plaintiff has failed to properly allege facts supporting the elements of fraud—necessary for a nondischargeability under § 523—with sufficient specificity to survive a motion to dismiss. [Doc. 5 ¶ 7].

### A. Pleading Standards

Federal Rule of Civil Procedure 12(b)(6)—which applies in adversary proceedings pursuant to Bankruptcy Rule 7012(b)—provides that a defendant in an adversary proceeding may move for dis-

missal for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). To state a claim, a plaintiff's complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Roe v. Aware Woman Ctr. for Choice, Inc.,* 253 F.3d 678, 683 (11th Cir.2001) (quoting *In re Plywood Antitrust Litigation,* 655 F.2d 627, 641 (5th Cir. Unit A 1981)). But simple "recitals of the elements of a cause of action, supported by mere conclusory statements," are not enough to survive a motion to dismiss; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When determining whether a claim is plausible, "the complaint must be construed in a light most favorable to the plaintiff and the factual allegations taken as true." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997).

▇▇▇ When a complaint alleges fraud—such as here—the pleading rules raise the standard. Federal Rule of Civil Procedure 9(b)—applicable in adversary proceedings via Bankruptcy Rule 7009(b)—provides that when alleging fraud, "a party must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). This Rule further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* The Eleventh Circuit has explained the requirements to satisfy Rule 9(b):

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (citing *Brooks v. Blue Cross and Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1371 (11th Cir.1997)) (punctuation omitted).

▇▇▇ Ordinarily, the proper remedy for a plaintiff's failure to plead fraud with sufficient specificity is to grant leave to amend the complaint. *See Wagner v. First Horizon Pharm. Corp.,* 464 F.3d 1273, 1280 (11th Cir.2006) (holding that proper remedy for insufficient pleading was to order "repleading for a more definite statement of the claim" where there was "no repeated failure on Plaintiffs' part to draft a conforming complaint" and the complaint made "a great deal of factual allegations" but "did not clearly link any of those facts to its causes of action") (punctuation omitted). But the court is not required to grant leave to amend the complaint *sua sponte* where the plaintiff "never filed a motion to amend nor requested leave to amend." *Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541, 542 (11th Cir.2002). Dismissal with prejudice is more appropriate "if a more carefully drafted complaint could not state a claim." *Bank v. Pitt,* 928 F.2d 1108, 1112 (11th Cir.1991), *overruled on other grounds by Wagner v. Daewoo Heavy Indus. Am. Corp.,* 314 F.3d 541 (11th Cir. 2002).

## B. The Basics of Section 523(a)(2)

Plaintiff seeks a determination that its claim is non-dischargeable pursuant to 11

U.S.C. § 523(a)(2). This code section provides that a debtor's discharge does not apply to a debt "for money, property, services, or an extension, renewal or refinancing of credit, to the extent obtained by" certain fraudulent actions. 11 U.S.C. § 523(a)(2). Subparagraph 523(a)(2)(A) renders debts nondischargeable to the extent they were obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The next subparagraph provides that a false statement respecting the debtor's financial condition must meet certain requirements, including that it be "in writing." 11 U.S.C. § 523(a)(2)(B).

 Section 523(a) embodies two policy goals. One "central purpose of the Code" is to provide debtors with a fresh start, i.e., "a new opportunity in life with a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt." *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (punctuation and citation omitted). On the other hand, the Code makes the benefits of the fresh start available only to the "honest but unfortunate debtor." *Id.* at 287, 111 S.Ct. 654. Accordingly, § 523(a) prevents dishonest debtors from escaping liability for the fruits of their transgressions. But it does not prevent honest debtors from starting fresh. In light of these underlying policies, "the exceptions to dischargeability are to be construed strictly," and "the burden is on the creditor to prove the exception." *In re Hunter*, 780 F.2d 1577, 1579 (11th Cir. 1986), *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) (citations omitted).

### C. Plaintiff's Fraud Allegations

In the Complaint, Plaintiff alleges that Morrow "obtained credit extended from Plaintiff by false pretenses, false representations, and/or actual fraud." (Compl. ¶ 31). As many courts have recognized, proving fraud is very difficult for credit card lenders because of the unique nature of credit card transactions. The Ninth Circuit explained:

> Traditional credit transactions are two-party transactions between the debtor and the creditor. In contrast, credit card transactions involve three-parties: 1) the debtor/card holder; 2) the creditor/card issuer; and 3) the merchant who honors the credit card. The difficulty in credit card cases is for the creditor, who does not deal face-to-face with the debtor, to prove the elements of misrepresentation and reliance.

*Citibank (South Dakota) v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087 (9th Cir.1996).

 To enable credit card companies to prove fraud in appropriate cases, courts tend to follow one of three theories. *Citibank (South Dakota) v. Eashai (In re Eashai)*, 87 F.3d 1082, 1087 (9th Cir.1996). Most courts follow the "implied representation" theory, according to which a debtor impliedly represents that he has the intention and ability to repay credit card charges when he incurs them. *Id.* Some courts follow the "totality of the circumstances" theory, under which courts look at the particular facts and circumstances of the case to determine whether the debtor engaged in deceptive conduct and thus demonstrated his intent to avoid repayment. *Id.* Other courts follow the "assumption of the risk" theory, whereby courts presume that credit card companies assume the risk of nonpayment and that a debtor only makes a false representation when he continues to use the card after the credit card company has communicated its revocation to him. *Id.*

This Court is bound by precedent of the Eleventh Circuit, which has adopted the assumption of the risk theory with respect to claims under false pretenses and false representations. The seminal case espousing this theory is *First Nat. Bank of Mobile v. Roddenberry*, 701 F.2d 927 (11th Cir.1983). In *Roddenberry*, the court reasoned that banks "are willing to risk non-payment of debts because that risk is factored into the finance charges." *Id.* at 932. The court further reasoned that this risk is "voluntary and calculated" and determined that the Bankruptcy Code's dischargeability provisions "should not be construed to afford additional protection for those who unwisely permit or encourage debtors to exceed their credit limits." *Id.* at 932. Based on this reasoning, the court held that "the voluntary assumption of risk on the part of a bank continues until it is clearly shown that the bank unequivocally and unconditionally revoked the right of the cardholder to further possession and use of the card, and until the cardholder is aware of this revocation." *Id.* at 932. After clear revocation, the court reasoned, a debtor who continues to make charges on the card engages in "more than an intentional concealment of insolvency." *Id.* at 932. Instead, according to the court, post-revocation use amounts to "an affirmative misrepresentation that one is entitled to possess and use the card," making that debt nondischargeable because it was obtained by "false pretenses or false representations." *Id.* *Roddenberry* remains good law and binds this Court.

The Eleventh Circuit decided *Roddenberry* under § 17(a)(2) of the Bankruptcy Act of 1898, which included "false pretenses or false representations," but not "actual fraud," as grounds for determining a debt non-dischargeable. *Roddenberry*, 701 F.2d at 930 n. 3. The Bankruptcy Act of 1978 adopted the existing grounds and added "actual fraud" to this subsection, which was re-codified as § 523(a). *Id.* The court in *Roddenberry* acknowledged that the addition of "actual fraud" could be construed to eliminate the distinction between overt and implied misrepresentations, but explicitly declined to express an opinion on that issue. *Id.*

In contrast to the assumption of risk theory, under the implied misrepresentation approach, "the debtor always is said to have impliedly represented at the time of a credit card sale that: (1) he had the ability to pay the debt in question; and (2) he also had the intention of paying that debt." *Chase Manhattan Bank, N.A. v. Ford (Matter of Ford)*, 186 B.R. 312, 317 (Bankr.N.D.Ga.1995) (citations omitted). In *Ford*, Judge Drake summarized the criticisms of the implied representation theory:

> First, to the extent that it makes each card user an absolute guarantor of his ability to pay, the doctrine offends the balance of bankruptcy policy struck by section 523. Second, inferring a guarantee of ability runs afoul of consumer practice and the natural course of events in the marketplace. Third, using such a series of presumptions gives card-issuing creditors an unfair advantage over normal creditors, who have to establish each and every element of fraud before a court will consider their claims nondischargeable. Lastly, and most importantly, by constructing a separate implied representation of ability, the doctrine suggests that a breach of that duty, in and of itself, will present sufficient grounds for denying a debtor his discharge.

*Id.* (footnotes omitted). In short, courts in this District have found it inappropriate to consider objective inability to pay as a separate ground for dismissal. *See, e.g., FIA Card Services, N.A. v. Evans (In re*

*Evans)*, 12–51133–PWB, 2012 WL 4049963 (Bankr.N.D.Ga. Sept. 7, 2012) (rejecting plaintiff's arguments "because they rely on the theory that a debtor's intent not to pay may be inferred solely from the inability to pay") (emphasis in original). As courts in this District have recognized, "people use credit cards because they do not have the present ability to pay." *Chase Manhattan Bank (U.S.A.) N.A. v. Carpenter (Matter of Carpenter)*, 53 B.R. 724, 728 (Bankr. N.D.Ga.1985). Accordingly, if a debtor's inability to pay could substitute for fraudulent intent, almost every debtor could find some of his credit card debts nondischargeable.

 Thus the key issue in a case under § 523(a) is not the debtor's *ability* to pay or his *objective* intent to pay; rather, it is his *subjective intent* to pay. Evidence of an inability to pay cannot substitute for evidence indicating a lack of intent to pay. 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][d] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The debtor's insolvency or inability to pay does not by itself provide a sufficient basis for inferring the debtor's intent.") (citing cases). Even if it appears to the objective observer that the debtor could never repay his debts, he has not committed fraud unless he had the subjective intent to avoid repayment. *Id.* ("A debtor's honest belief that a debt would be repaid in the future, even if in hindsight found to have been very unrealistic, negates any fraudulent intent.") (citing cases). Simply put, the plaintiff must ultimately prove the debtor misrepresented his intent to pay. *Ford*, 186 B.R. at 319 ("If one does not have proof of the debtor's misrepresented in-

tent, then one does not have proof of actual fraud. *Instead, one merely has fraud implied in law, which never will support a finding of non-dischargeability.*") (citation omitted) (emphasis in original).

 Courts in this District have considered the question of the addition of "actual fraud"[2] to § 523(a)(2) in the wake of *Roddenberry* and concluded that an implied representation prior to revocation is insufficient—even under an "actual fraud" theory—to render a debt nondischargeable pursuant to § 523(a)(2). *See FDS Nat. Bank v. Alam (In re Alam )*, 314 B.R. 834, 842 (Bankr.N.D.Ga.2004) (rejecting plaintiff's reliance on implied representations "whether advanced to support nondischargeability based on false pretenses, false representation, or actual fraud"). The District Court for the Northern District of Georgia has reached the same conclusion. *See Citibank (South Dakota) v. Kim (In re Kim)*, 2003 U.S. Dist. LEXIS 25566 (March 26, 2003) (concluding that "regardless of whether a claim of nondischargeability alleges false pretenses, false representation, or actual fraud, *Roddenberry* indicates that an implied representation can never serve as the basis for the claim"). Thus the precedents of the Eleventh Circuit and Bankruptcy and District Courts in this District compel the conclusion that the implied representation theory is simply not viable here to support a claim under § 523(a)(2).

 Nevertheless, courts in this District have held that a debtor commits actual fraud within the meaning of § 523(a)(2)(A) when he incurs credit card

---

**2.** The definition of actual fraud is broader than that of false pretenses or representations, including "any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another—something said, done or omitted with the design of perpetrating what is known to be a cheat or deception." 4 COLLIER ON BANKRUPTCY ¶ 523.08[1][e] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (citing cases).

debt with no actual, subjective intent to repay it. *Alam,* 314 B.R. at 841 ("Under these principles, a debtor commits actual fraud for purposes of § 523(a)(2)(A) if the debtor uses a credit card without the actual, subjective intent to pay the debt thereby incurred.") (citations omitted). "Such a claim is established by showing sufficient facts from which the Court may draw an inference of the debtor's actual, subjective fraudulent intent." *Evans,* 2012 WL 4049963, at *2 (citation omitted). Courts in this District have also held that "a debtor commits actual fraud when she misrepresents her intent to pay the debt" and that "courts should determine the existence of that misrepresented intent by looking to the totality of the circumstances." *Ford,* 186 B.R. at 320 (punctuation, citation and footnote omitted). Courts typically consider a number of factors when determining whether a debtor intended to pay for charges:

1. the length of time between the charges made and the filing of bankruptcy;
2. whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges were made;
3. the number of charges made;
4. the amount of the charges;
5. the financial condition of the debtor at the time the charges are made;
6. whether the charges were above the credit limit of the account;
7. did the debtor make multiple charges on the same day;
8. whether or not the debtor was employed;
9. the debtor's prospects for employment;
10. financial sophistication of the debtor;
11. whether there was a sudden change in the debtor's buying habits; and
12. whether the purchases were made for luxuries or necessities.

*Carpenter,* 53 B.R. at 730. The question of a debtor's intent necessarily must be determined on a case by case basis, and these factors may or may not be helpful in any given case. *Id.*

In addition to its general fraud allegations, Plaintiff more specifically alleges that its claim is nondischargeable under § 523(a)(2) because Morrow engaged in a scheme of "credit card kiting." The seminal case involving credit card kiting and § 523(a)(2) is *Citibank (South Dakota) v. Eashai (In re Eashai),* 87 F.3d 1082 (9th Cir.1996). In *Eashai,* the Ninth Circuit explained that a debtor engages in credit card kiting when he "uses cash advances on one credit card to make the minimum payments on another credit card and has no intention to pay for the money, property or services received." *Id.* at 1088. The court held that in this scenario, "the debtor makes a false representation: 1) by creating the facade that all of his accounts are in good standing; and 2) by failing to disclose to the creditor his intent not to pay his credit card debt." *Id.* The court further explained that this "facade gives the debtor the appearance of an honest debtor, who is servicing his credit card debt in a timely manner by making minimum payments each month." *Id.* The court held that by engaging in credit card kiting and creating this facade with no intent to pay his debts, a debtor commits actual fraud, rendering his credit card debt nondischargeable. *Id.* at 1089–90. The court emphasized that "[t]he most important element in establishing a kiting scheme is intent to deceive." *Id.* at 1090.

The *Eashai* Court acknowledged that another key element in any fraud case is justifiable reliance and explained how credit card kiting creates such reliance:

In a kiting case, the creditor continues to extend credit to the debtor in reliance on the fact that the debtor's credit card

account is not in default. In some instances, the creditor may initially rely on the debtor's credit report (before issuing the credit card) which shows that the debtor has a history of servicing his credit card debt in a timely manner. The debtor, who is kiting his credit cards, creates the illusion that he intends to pay his credit card debts and honor his credit agreements. Presumably, if the creditor knew the true state of the debtor's financial affairs and intentions, the creditor would revoke the debtor's credit card or deny the debtor's request for a credit card. Thus, by kiting, the debtor induces the creditor to refrain from action in reliance on the appearance of the debtor's intent to repay.... [T] he true deceit of kiting is that by making minimum payments the debtor almost guarantees that his account will never raise a red flag."

*Id.* at 1091. In sum, the creditor is deceived by the credit card kiter's efforts to conceal his true financial condition and intent to pay.

Some courts have followed *Eashai* and have found debts nondischargeable under § 523(a)(2) where the debtor engaged in credit card kiting. *See, e.g., AT & T Universal Card Services v. Broerman (In re Broerman)*, 97–2569–CH, 1999 WL 35020115 (Bankr.S.D.Iowa Jan. 19, 1999) (excepting credit card company's claim from discharge under § 523(a)(2)(A) because debtor "knowingly and intentionally deceived her creditors" by engaging in credit card kiting activity while knowing she would be unable to pay her debts). Other courts have distinguished *Eashai*, finding in various cases that the debtor intended to pay his or her debts and thus did not act fraudulently. *See, e.g., Hunt-*

*ington Nat. Bank v. Lippert (In re Lippert)*, 206 B.R. 136, 141 (Bankr.N.D.Ohio 1997) (finding that although debtor "used advances from one card to pay in full the indebtedness on another card," which "may have permitted the Debtor to postpone the day of reckoning, it does not appear designed to enable him to pyramid debts he did not intend to pay"). At least one court has found that the debtor did not commit fraud despite having engaged in credit card kiting. *See AT & T Universal Card Services v. Dietzel (In re Dietzel)*, 245 B.R. 747, 756 (Bankr.D.Mass.2000) ("Although the Debtor admitted that he engaged in credit card kiting, he testified that he used the cash to pay bills and to support his family.").

 Although credit card kiting can be evidence of a debtor's subjective intent not to pay,[3] courts should be careful not to rely on such a scheme to show that the debtor thereby made false representations of his financial condition through the scheme because § 523(a)(2)(A) specifically excludes from its ambit "statement[s] respecting the debtor's ... financial condition." 11 U.S.C. § 523(a)(2)(A). Instead, statements respecting the debtor's financial condition are governed by § 523(a)(2)(B), which requires that any such statement be "in writing." 11 U.S.C. § 523(a)(2)(B). "Paragraphs (A) and (B) of section 523(a)(2) are mutually exclusive." 4 COLLIER ON BANKRUPTCY ¶ 523.08[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) 523–43 (citing Congressional Record). In a credit card kiting case, obviously the debtor's concealment or implied misrepresentation of his financial position is never in writing.

Courts in this District have previously addressed the inconsistency between the

---

**3.** For example, evidence that a debtor was using cash advances to make credit card payments may be circumstantial evidence indicating that the debtor never intended to pay

off his balance. The Court takes no position on what weight, if any, the finder of fact ought to assign this circumstantial evidence at trial.

implied misrepresentation theory and the Code's requirement that statements of financial position be in writing. In *In re Alam*, Judge Bonapfel pointed out this conflict:

> Section 523(a)(2)(A) excludes "a statement respecting the debtor's ... financial condition" from the type of false pretenses or false representations that give rise to a nondischargeable debt. Instead, nondischargeability based on misrepresentation of financial condition is governed by § 523(a)(2)(B), which requires that such representations be written. If the use of a card is an implied representation or statement of one's ability to pay, it is necessarily an unwritten statement of one's financial condition. As such, it cannot serve as a basis for nondischargeability under § 523(a)(2)(A)."

*Alam*, 314 B.R. at 839. Other courts and commentators have also recognized this inconsistency. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.08[6] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) ("The theory that use of the card is an implied representation of the debtor's ability to pay appears in conflict with 523(a)(2)(A)'s explicit restriction excepting debts arising from false pretenses, false representations or actual fraud 'other than a statement respecting the debtor's or an insider's financial condition.' ") (citing cases).

 Further, the Eleventh Circuit has held that alleged concealment of financial condition alone is insufficient to support a claim under § 523(a)(2). In *Schweig v. Hunter*, the plaintiff-creditor sought to except his claim from discharge, alleging that the debtor "had a duty to voluntarily disclose his gambling debts and unstable financial conditions and his failure to do so amounted to obtaining funds through false pretenses, a false representation, or actual fraud." *Schweig v. Hunt-er (In re Hunter)*, 780 F.2d 1577, 1579 (11th Cir.1986) *abrogated on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Relying on *Davison–Paxon Co. v. Caldwell*, 115 F.2d 189 (5th Cir.1941), *cert. denied* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941)), the court held that "not making full disclosure is not within the exception." *Id.* at 1580. The court explained that "there must be actual overt false pretense or representation to come within the exception," and the "absence of explicit representations concerning financial conditions by the bankrupt requires a holding that there have been no false pretenses or false representations." *Id.* Although the court did not specifically discuss whether concealment of financial condition can amount to actual fraud under § 523(a)(2)(A), the court's holding affirming the bankruptcy court's dismissal of the case compels the conclusion that it cannot. Similarly, as discussed above, the Eleventh Circuit in *Roddenberry* reasoned that a debtor who continues making charges on a revoked card engages in "more than an intentional concealment of insolvency." *Roddenberry*, 701 F.2d at 932. This statement suggests that even an intentional concealment of insolvency would be insufficient to render credit card debt nondischargeable.

 Although this Complaint improperly seeks relief against the Debtor for implied misrepresentations, unwritten misrepresentations regarding her financial condition, and the objective intent not to pay the Plaintiff, an analysis of the Complaint leads to the conclusion that Plaintiff has alleged sufficient facts, which if assumed to be true, create an inference that Morrow did not subjectively intend to pay for the charges she incurred. Although the Court makes no findings on the issue at this time, the totality of the circumstances indicate that it may be possible for Plaintiff to prove that Morrow did not

subjectively intend to pay for her charges when she made them. Thus, if all of Plaintiff's allegations and reasonable inferences are accepted as true—as they must be on a motion to dismiss—Plaintiff does state a claim for nondischargeability for actual fraud under § 523(a)(2).[4]

### Conclusion

Upon consideration of all matters of record, it is hereby

ORDERED that Debtors' Motion to Dismiss is DENIED. Plaintiff did not fail to join a necessary party, so dismissal on that ground is not warranted. Dismissal for failure to state a claim is inappropriate because Plaintiff alleged sufficient facts related to Morrow's intent to pay for debts incurred to state a claim for actual fraud under § 523(a)(2).

---

**4.** The facts as pled are barely sufficient to survive a Rule 12(b)(6) motion to dismiss. Should Plaintiff fail to prove its case at trial, Debtor may be entitled to fees and costs pursuant to § 523(d), which provides that the Court "shall" award costs and fees to the Debtor if the Court finds that the creditor's position was not "substantially justified" unless "special circumstances would make the award unjust." 11 U.S.C. § 523(d).