FILED

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

In re:                              )    BAP No. CC-12-1452-TaKuKi
                                    )
ZINOVIY BERSHADSKIY,                )    Bk. No. SV 10-25466-AA
                                    )
                    Debtor.         )    Adv. No. SV 11-01477-AA
_____)
ZINOVIY BERSHADSKIY,                )
                                    )
                    Appellant,      )
                                    )
v.                                  )    MEMORANDUM[*]
                                    )
RODEO REALTY, INC.,                 )
                                    )
                    Appellee.       )
_____)

Submitted Without Oral Argument[**]
September 19, 2013

Filed - October 15, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Alan M. Ahart, Bankruptcy Judge, Presiding
_____

Appearances:    Appellant Zinoviy Bershadskiy, pro se, on brief;
                Mark M. Sharf of Merritt, Hagen & Sharf LP, on
                brief, for Appellee Rodeo Realty, Inc.
                _____

Before: TAYLOR, KURTZ, and KIRSCHER, Bankruptcy Judges.

_____

   [*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

   [**]In an order entered on May 24, 2013, the Panel determined that this matter was suitable for disposition without oral argument. Fed. R. Bankr. P. 8012; 9th Cir. BAP Rule 8012-1.

**INTRODUCTION**

Rodeo Realty, Inc. ("Rodeo Realty") initiated a nondischargeability action against appellant, chapter 7 debtor, Zinoviy Bershadskiy ("Appellant"), under 11 U.S.C. §§ 523(a)(2) and (a)(6).[1] Rodeo Realty sought summary judgment; debtor failed to oppose; the bankruptcy court granted summary judgment under § 523(a)(2) and entered a nondischargeable judgment in Rodeo Realty's favor in the amount of $47,250 plus post-judgment interest ("Judgment"). Appellant filed a timely notice of appeal from the Judgment. We AFFIRM.

**FACTS**[2]

On July 19, 2010, Appellant entered into a 180-day exclusive listing agreement with Rodeo Realty ("Listing") in relation to his Los Angeles residence (the "Property"). The Listing stated a sales price of $1,075,000 and also provided that: "Seller may cancel this contract after 30 days. Paragraph 1A will apply if a

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Appellant filed only an opening brief in this appeal. He did not file any excerpts of the record, although he attached to his opening brief a copy of a document titled "Exclusive Authorization and Right to Sell (Listing) Agreement." By order entered December 7, 2012, the Panel waived the requirement of Fed. R. Bankr. P. 8009(b) that the Appellant file and serve an appendix to his brief containing excerpts of the record. Fortunately for purposes of appellate review, Rodeo Realty filed excerpts of the record in support of its opening brief; we reviewed and relied upon these documents. In addition, we exercised our discretion to review documents on the bankruptcy court's electronic docket to assist us in ascertaining the relevant procedural history. O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 958 (9th Cir. 1989).

cancellation is requested." Complaint, Adv. Dkt. #1, Ex. A.; Decl. Yelena Pavlova, Adv. Dkt. #44, Ex. A. Paragraph 1A provided, in relevant part, that:

> Should [Rodeo Realty] procure a purchaser ready, willing, and able to purchase the above property at the above price and terms, or at a price accepted by [Appellant], [Appellant] shall pay [Rodeo Realty] a fee of 5% of such listing or sales price plus $250. [Appellant] shall pay [Rodeo Realty] a like fee should the property be sold, transferred, exchanged, or leased during the term of this listing, by any source including [Appellant], or within six months after the expiration of this contract to any person with whom [Rodeo Realty] has had any communications prior to the termination of the listing term provided that said [Rodeo Realty's] sub-agent shall have notified [Appellant] of such communication verbally, or in writing, within 10 days after the termination of the listing term. [Rodeo Realty] is entitled to said fee whether any escrow resulting from such offer closes during or after the expiration of the listing term.

Id. The Listing further provided, at paragraph 1C, that: "Should [Appellant] (a) withdraw the property from sale, . . . [Appellant], nonetheless, shall pay [Rodeo Realty] a fee equal to the percentage of the listing price as stated in paragraph 1 above."[3] Id.

Sometime after August 19, 2010, Appellant requested cancellation of the Listing, and Rodeo Realty agreed. On December 9, 2010, Appellant filed a voluntary bankruptcy petition under chapter 11. The case ultimately was converted to a case

---

[3] These quoted provisions of the Listing are substantially consistent with the provisions set forth in the copy of the Listing attached to Appellant's Opening Brief. The only point of difference is the commission percentage. In the copy of the Listing attached to the Complaint, the inserted handwritten number is a "5." In the copy attached to Appellant's Opening Brief, the inserted number appears to be a "3" with the initials "ZB" handwritten above it and on top of text in the form.

under chapter 7, and Rodeo Realty filed a timely nondischargeability complaint.

In the complaint, Rodeo Realty alleged that Appellant committed fraud when he falsely represented that he was taking the Property off the market, when, in fact, he intended to sell it to a Rodeo Realty registered buyer. Rodeo Realty alleged damages of 5% of the sales price, plus $250, as provided under the Listing, as a proximate result of Appellant's fraudulent conduct. Rodeo Realty sought a nondischargeable judgment in the amount of the lost commission pursuant to § 523(a)(2),[4] as well as punitive damages and attorney's fees.[5]

Appellant, originally represented by counsel, filed a motion to dismiss the complaint which the bankruptcy court denied. Appellant thereafter substituted himself in place of counsel and filed documents docketed as an answer. The answer consists of a one-paragraph undated letter to the judge from Appellant and copies of various correspondence. In the letter, Appellant denied fraud. Approximately eight months later, Rodeo Realty filed and served its motion for summary judgment (hereinafter, "MSJ") along with a memorandum of points and authorities, four

---

[4] Rodeo Realty failed to expressly set forth in its complaint whether it sought relief under subsection (a)(2)(A) or (a)(2)(B) of § 523, and the Judgment, likewise, references only § 523(a)(2). Nonetheless, when viewed in context, it is clear that Rodeo Realty sought nondischargeability based on alleged actual fraud under § 523(a)(2)(A) and not based on use of a materially false statement in writing "respecting the debtor's or an insider's financial condition," under § 523(a)(2)(B).

[5] The complaint included a second cause of action for nondischargeability under § 523(a)(6), which we do not further mention here as the bankruptcy court entered the Judgment solely on § 523(a)(2)(A).

- 4 -

declarations, a request for judicial notice, and a separate statement of uncontroverted facts. The Notice of Motion gave notice to Appellant that failure to file and serve papers in opposition to the MSJ could be deemed consent to the relief sought therein.

The evidence submitted by Rodeo Realty in support of the MSJ included the following:

1. A declaration by Yelena Pavlova, a licensed real estate agent at Rodeo Realty who was the primary contact with Appellant, because, like Appellant, she was fluent in Russian. She attached an authenticated copy of the Listing. Ms. Pavlova declared under penalty of perjury that she showed the Property to Abraham Bak and later to his wife and daughter, within 24 to 48 hours of initial contact on August 15, 2010. Thereafter she had multiple telephone conversations with Mr. Bak. She offered, as corroboration, copies of her cellphone records and identified the respective contact numbers. She met with Mr. Bak on August 31, 2010 to discuss a proposed sale of the Property at $900,000, and later that day with Appellant to discuss Mr. Bak's expression of interest, which caused Appellant to authorize a reduction of the listing price to $999,950 to encourage an offer from Mr. Bak.

Ms. Pavlova stated that her co-agent, Marc Tahler, and she received a fax from Appellant's daughter Marina Fox on September 8, 2010 requesting that Rodeo Realty cancel its Listing. She attached a copy of the fax as an exhibit to her declaration. She stated that she confirmed by telephone

- 5 -

with Appellant that his daughter was properly acting on his behalf, and on September 9, 2010, Rodeo Realty canceled the Listing. Rodeo Realty sent a letter dated September 9, 2010, specifically identifying Mr. and Mrs. Bak as potential buyers, and another letter on September 14, 2010. Copies of the two letters were attached to Ms. Pavlova's declaration as exhibits. Ms. Pavlova also stated that at no time did Appellant or anyone on his behalf disclose that Appellant decided to sell the Property to Mr. Bak without Rodeo Realty's assistance.

Finally, Ms. Pavlova attached as an exhibit to her declaration a copy of a Grant Deed executed by Appellant on November 2, 2010, deeding the Property to the Baks. The Grant Deed was recorded on November 5, 2010. She learned from the Multiple Listing Service database, which she stated to be a source regularly relied upon by agents, that the Property was sold for $940,000. Ms. Pavlova stated that the commission due and owing to Rodeo based on the sale, was $47,000 (5%) plus $250.

2. A declaration by Marc Tahler, under penalty of perjury, who is a licensed salesperson at Rodeo Realty. Mr. Tahler stated that he attended the meeting with Ms. Pavlova and Mr. Bak on August 31, 2010 to discuss a possible offer to purchase the Property and later the meeting with Appellant that resulted in an authorized reduction in the listing price.

Mr. Tahler stated that he received a telephone call from Appellant's daughter Marina Fox on September 6 or 7,

2010 during which she "pretended that her father had requested that the Listing Agreement be canceled two weeks earlier." Tahler Decl., Adv. Dkt. #34 at 2:14-16. He stated that he informed Ms. Fox that her father made no such request. Mr. Tahler then corroborated Ms. Pavlova's statement that they received the fax from Ms. Fox on September 8, 2010 requesting cancellation of the Listing with no disclosure, at any time by anyone, that Appellant had decided to sell the Property to Mr. Bak without assistance from Rodeo Realty. Mr. Tahler sent the letters on September 9, 2010 and September 14, 2010 (to correct the spelling), identifying Mr. Bak as a potential buyer protected under the Listing.

3. The Declaration of Mark M. Sharf, as Rodeo Realty's counsel, regarding the deposition testimony of Appellant taken on April 30, 2012, attached to which is a copy of the reporter's transcript. Mr. Sharf stated that Appellant had refused to comply with the Notice of Deposition requirement that he produce his telephone records regarding communications between Appellant and Mr. Bak, and others, for the months of August through December. In addition, Mr. Sharf pointed out that Appellant testified that Appellant's daughter also refused to produce her telephone records.

Mr. Sharf also reviewed the Appellant's Statement of Financial Affairs in his bankruptcy case and noted that Appellant failed to disclose the sale of the Property, which would have been required by an accurate answer to

- 7 -

Question 10.[6]

In Rodeo Realty's Memorandum of Points and Authorities, Rodeo Realty argued that Appellant obtained cancellation of the Listing by not disclosing his negotiations to sell to Mr. Bak, and did so intentionally to avoid paying a commission. It provided evidence that within 60 days after the Listing was cancelled, the Property was deeded to the Baks. It also argued that as part of the deception, Appellant and his daughter falsely represented that Appellant canceled the Listing before the September 8, 2010 fax. Rodeo Realty argued that Appellant concealed the sale transaction from Rodeo Realty as well as from the bankruptcy court, his creditors, and the chapter 7 trustee by answering "none" to Question 10 of the Statement of Financial Affairs, refusing to testify regarding the net proceeds from the sale, and refusing to produce his telephone records regarding contacts with Mr. Bak. Rodeo Realty finally argued that the bankruptcy court could infer Appellant's knowledge and fraudulent intent from the number of fabrications, the "rush to fire Rodeo Realty when a serious buyer was located, proximity of the sale to the cancellation of the listing agreement, combined with the continuing concealment of the sale" in the bankruptcy case filed shortly thereafter. MSJ, Adv. Dkt. #40 at 10.

Appellant filed nothing in opposition.

The bankruptcy court waived appearances at the hearing on the MSJ and entered the Judgment on August 16, 2012. Appellant

---

[6] Rodeo Realty also filed a Request to Take Judicial Notice of Appellant's bankruptcy filings, and in particular the Appellant's non-disclosure of the sale of the Property.

timely filed the notice of appeal on August 28, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I).  We have jurisdiction under 28 U.S.C. § 158(a)(1).

## ISSUES

Did the bankruptcy court err when it granted Rodeo Realty's MSJ and entered the Judgment against Appellant?

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment.  <u>Boyajian v. New Falls Corp. (In re Boyajian)</u>, 564 F.3d 1088, 1090 (9th Cir. 2009); <u>Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez)</u>, 367 B.R. 99, 103 (9th Cir. BAP 2007).  Viewing the evidence in the light most favorable to the non-moving party (i.e., Appellant), we determine whether the bankruptcy court correctly found that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  <u>Jesinger v. Nev. Fed. Credit Union</u>, 24 F.3d 1127, 1130 (9th Cir. 1994); <u>Gertsch v. Johnson & Johnson Fin. Corp. (In re Gertsch)</u>, 237 B.R. 160, 165 (9th Cir. BAP 1999).

## DISCUSSION

A.   Waiver of Claims and Arguments

Rodeo Realty argues that Appellant waived all factual and legal arguments by failing to raise them before the bankruptcy court in response to the MSJ.  This argument has some merit.

As an appellate court, "We are [] concerned only with the record before the trial judge when his decision was made."

- 9 -

Kirschner v. Uniden Corp. of Am., 842 F.2d 1074, 1077 (9th Cir. 1988) (internal quote and citation omitted). Evidence not admitted by the bankruptcy court is not part of the record and cannot be considered in this appeal. Id. at 1077-1078.

In Appellant's Opening Brief he states one issue to be reviewed:

> Whether the bankruptcy code section 523(a)(2) applies given that there is evidence of substantial fraud, misrepresentation and deceit on the part of Plaintiff Rodeo with regard to its legal action and the evidence it has provided in support of its action, to collect its purported real estate sales commission.

Apl't Opening Brief at 5. He argues, without any citation to the record, that Rodeo Realty engaged in misrepresentations designed to trick Appellant into believing that Appellant owed a commission for the sale of the Property, whereas Appellant sold the Property to a neighbor who found the Property himself without the aid of Rodeo Realty. Appellant denies that Rodeo Realty's agents ever showed the Property to the buyer, much less prior to cancellation of the Listing, and he argues that Rodeo Realty doctored the Listing, converting the commission fee from 2% to 5%. Appellant presented none of these alleged factual contentions to the bankruptcy court.

We are cognizant of our duty to ensure that pro se litigants do not lose their right to a determination of the merits due to ignorance of a technical procedural requirement.[7] We, however, must limit our consideration to the record before the bankruptcy court. United States v. Kitsap Physicians Serv., 314 F.3d 995,

_____

[7] See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1986).

- 10 -

999 (9th Cir. 2002). Appellant waived his factual arguments by failing to file any response to the MSJ, and he cannot create disputed issues of fact by presenting them here in the first instance. Nevertheless, we will examine the record to determine if any basis for reversal is clearly evident,[8] as our de novo review necessarily includes determination as to whether Rodeo Realty is entitled to judgment as a matter of law.

B. Motion to Dismiss[9]

Before we consider the merits of the MSJ, we briefly note Appellant's contention that the dispute between the parties was a simple breach of contract claim that should have been dismissed at the outset of the Adversary Proceeding, pursuant to Appellant's motion to dismiss under Civil Rules 9(b) and 12(b)(6). Appellant did not include the denial of his motion to dismiss as an issue in his Opening Brief, nor did he file a Statement of Issues on Appeal. Nor does Appellant present in his Opening Brief any substantive argument that addresses the bankruptcy court's denial of the motion to dismiss. Appellant's sole statement, however, that the dispute is nothing more than breach of contract, goes directly to the merits of whether Rodeo Realty met its burden of proof on summary judgment and established its entitlement to judgment, as a matter of law, based on fraud. We conclude that it did, and we address this

---

[8]  It is error to grant summary judgment simply because the opponent failed to oppose. N. Slope Borough v. Rogstad (In re Rogstad), 126 F.3d 1224, 1227 (9th Cir. 1997).

[9]  "[A]n appeal from the final judgment draws in question all earlier non-final orders and all rulings which produced the judgment." Munoz v. Small Bus. Admin., 644 F.2d 1361, 1364, 1363 (9th Cir. 1981).

- 11 -

issue hereafter.

C.   The MSJ

Summary judgment is governed by Rule 7056.  Rule 7056, incorporating Civil Rule 56(c), states that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The burden of establishing that there is no genuine issue of material fact lies with the moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In order to establish that a debt is nondischargeable under section 523(a)(2)(A), a creditor must establish five elements by a preponderance of the evidence:

> (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct.

Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000); Ghomeshi v. Sabban (In re Sabban), 384 B.R. 1, 5 (9th Cir. BAP 2008).  Based on our de novo review of the record before the bankruptcy court, we conclude that no genuine issue as to any material fact exists, that Rodeo Realty carried its burden of proof on each of the five elements of § 523(a)(2)(A), and that Rodeo Realty is entitled to judgment as a matter of law.

Through the declaratory evidence offered by Ms. Pavlova and Mr. Tahler and corroborating cellphone records, Rodeo Realty

established that it identified Mr. Bak as a potential purchaser during the term of the Listing. The denial contained in the answer is insufficient to create a triable issue of fact on this point; Appellant had to come forward with evidence of specific facts in the face of Rodeo Realty's case. Both of Rodeo Realty's declarants testified that when Appellant sought to cancel the Listing, within days of introduction to Mr. Bak as an interested buyer, he failed to disclose that he was in negotiations to sell the Property to Mr. Bak. The testimony that Appellant never advised Rodeo Realty of the sale, which closed less than 60 days after cancellation of the Listing, is also undisputed, as is the fact that the following month Appellant filed his chapter 7 bankruptcy, again without disclosing the closed sale transaction.

An omission of a material fact can constitute a false representation actionable under section 523(a)(2)(A). <u>Citibank (S.D.), N.A. v. Eashai (In re Eashai)</u>, 87 F.3d 1082, 1088-89 (9th Cir. 1996). However, there must be a duty to disclose. <u>Id.</u> Here, Appellant entered into a business transaction with Rodeo Realty that included a provision allowing cancellation subject to payment of the agreed commission if Appellant later sold the Property to a registered buyer. Under such circumstances, Appellant had a duty to disclose to Rodeo Realty the post-cancellation sale and intent to sell the Property. <u>See</u> <u>Apte v. Japra (In re Apte)</u>, 96 F.3d 1319, 1324 (9th Cir. 1996). The fraudulent omissions related to this sale as well as the affirmative misrepresentation that he was taking the Property off the market satisfy the first element necessary for section 523(a)(2)(A) relief.

Further, Rodeo Realty's evidence establishes both Appellant's knowledge of the falsity and deceptiveness of his statements and omissions and his intent to deceive. Appellant signed a contract, knew its terms as he requested cancellation, knew that he sold his own home, and knew that he did not tell Rodeo Realty about the sale. Few debtor defendants are likely to admit defrauding their creditor, therefore, "fraudulent intent may be established by circumstantial evidence, or by inferences drawn from a course of conduct." Devers v. Bank of Sheridan, Mont. (In re Devers), 759 F.2d 751, 753-54 (9th Cir. 1985). Alexander & Alexander of Wash., Inc. v. Hultquist (In re Hultquist), 101 B.R. 180, 183 (9th Cir. BAP 1989). Here, the circumstantial evidence – Appellant's sale of the Property to Mr. Bak: a registered potential buyer; the timing of the cancellation: days after introduction to Mr. Bak; the timing of the sale: shortly after cancelling the Listing; the sales price of $940,000: almost exactly the amount of the agreed reduced list price, less the 5% commission that Appellant agreed to pay to Rodeo Realty; Appellant's failure to disclose the sale in his Statement of Financial Affairs in his chapter 7 bankruptcy initiated a month after closing; and Appellant's refusal to supply phone records in discovery – only supports the inference that Appellant knowingly intended to prevent Rodeo Realty from collecting its commission.

The evidence also supports a finding of justifiable reliance. First, justifiable reliance turns on a person's knowledge under the particular circumstances. In re Eashai, 87 F.3d at 1090. Here, there is no evidence that Rodeo Realty

- 14 -

had any knowledge of Appellant's fraud or even an ability to detect fraud or reason to look for it. Reliance can be presumed where the fraud primarily involves omissions. <u>Binder v. Gillespie</u>, 184 F.3d 1059, 1064 (9th Cir. 1999).

The only question that then remains is the amount of damages proximately caused by Appellant's non-disclosure. Rodeo Realty's evidence establishes that Appellant's intentional failure to disclose the sale effectively prevented it from protecting its rights to collect the commission owed. Without knowledge of the pending sale, Rodeo Realty could not put a demand into escrow and could not lien the proceeds if the demand were refused. And, without knowledge of the transaction, Rodeo Realty could not bring an action to collect. Free from oversight, as a result of his deceit, Appellant promptly put sale proceeds beyond Rodeo Realty's control and filed bankruptcy. Appellant testified in his deposition that he gave some of the sale proceeds to his daughters and spent the balance, proximately causing Rodeo Realty damages in the amount of the commission it could otherwise have collected. Here, Rodeo Realty's damages flowed cleanly from Appellant's fraud. The only evidence establishes that this is not a mere breach of contract case and that Appellant is not an honest but unfortunate debtor entitled to discharge.

The bankruptcy court entered judgment in an amount consistent with the undisputed evidence in Ms. Pavolva's declaration that the Property sold for $940,000, and that it was damaged in the amount of the contract commission fee of 5% plus $250. The Judgment, entered in the amount of the earned

commission,[10] is well-supported by substantial evidence. Appellant failed to present any evidence to the contrary, and we determine that we cannot make any justifiable inferences to the contrary.

Therefore, we conclude that the bankruptcy court did not commit error and that Rodeo Realty is entitled to summary judgment, as a matter of law.

**CONCLUSION**

For all the reasons set forth above, we AFFIRM the bankruptcy court's summary judgment in favor of Rodeo Realty.

---

[10] Although Rodeo Realty also sought punitive damages, it is clear from the record that the bankruptcy court did not award punitive damages. And, although the Judgment also allowed Rodeo Realty to request attorney's fees and costs and we located on the docket an entered order that allowed fees and costs to Rodeo Realty, Appellant has not sought review of that order in this appeal and we, thus, do not address the appropriateness of an attorney's fees award under the circumstances of this Adversary Proceeding.

- 16 -