(Slip Opinion) OCTOBER TERM, 2015 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## HUSKY INTERNATIONAL ELECTRONICS, INC. *v.* RITZ

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 15–145. Argued March 1, 2016—Decided May 16, 2016

Chrysalis Manufacturing Corp. incurred a debt to petitioner Husky International Electronics, Inc., of nearly $164,000. Respondent Daniel Lee Ritz, Jr., Chrysalis' director and part owner at the time, drained Chrysalis of assets available to pay the debt by transferring large sums of money to other entities Ritz controlled. Husky sued Ritz to recover on the debt. Ritz then filed for Chapter 7 bankruptcy, prompting Husky to file a complaint in Ritz' bankruptcy case, seeking to hold him personally liable and contending that the debt was not dischargeable because Ritz' intercompany-transfer scheme constituted "actual fraud" under the Bankruptcy Code's discharge exceptions. 11 U. S. C. §523(a)(2)(A).

The District Court held that Ritz was personally liable under state law but also held that the debt was not "obtained by . . . actual fraud" under §523(a)(2)(A) and thus could be discharged in bankruptcy. The Fifth Circuit affirmed, holding that a misrepresentation from a debtor to a creditor is a necessary element of "actual fraud" and was lacking in this case, because Ritz made no false representations to Husky regarding the transfer of Chrysalis' assets.

*Held*: The term "actual fraud" in §523(a)(2)(A) encompasses fraudulent conveyance schemes, even when those schemes do not involve a false representation. Pp. 3–11.

(a) It is sensible to presume that when Congress amended the Bankruptcy Code in 1978 and added to debts obtained by "false pretenses or false representations" an additional bankruptcy discharge exception for debts obtained by "actual fraud," it did not intend the term "actual fraud" to mean the same thing as the already-existing term "false representations." See *United States* v. *Quality Stores,*

*Inc.*, 572 U. S. \_\_\_, \_\_\_. Even stronger evidence that "actual fraud" encompasses the kind of conduct alleged to have occurred here is found in the phrase's historical meaning. At common law, "actual fraud" meant fraud committed with wrongful intent, *Neal* v. *Clark*, 95 U. S. 704, 709. And the term "fraud" has, since the beginnings of bankruptcy practice, been used to describe asset transfers that, like Ritz' scheme, impair a creditor's ability to collect a debt.

One of the first bankruptcy Acts, the Fraudulent Conveyances Act of 1571, 13 Eliz., ch. 5, identified as "fraud" conveyances made with "[i]ntent to delay hynder or defraude [c]reditors." The degree to which that statute remains embedded in fraud-related laws today, see, *e.g., BFP* v. *Resolution Trust Corporation*, 511 U. S. 531, 540, clarifies that the common-law term "actual fraud" is broad enough to incorporate fraudulent conveyances. The common law also indicates that fraudulent conveyances do not require a misrepresentation from a debtor to a creditor, see *id.*, at 541, as they lie not in dishonestly inducing a creditor to extend a debt but in the acts of concealment and hindrance. Pp. 3–6.

(b) Interpreting "actual fraud" in §523(a)(2)(A) to encompass fraudulent conveyances would not, as Ritz contends, render duplicative two of §523's other discharge exceptions, §§523(a)(4), (6), given that "actual fraud" captures much conduct not covered by those other provisions. Nor does this interpretation create a redundancy in §727(a)(2), which is meaningfully different from §523(a)(2)(A). It is also not incompatible with §523(a)(2)(A)'s "obtained by" requirement. Even though the transferor of a fraudulent conveyance does not obtain assets or debts through the fraudulent conveyance, the transferee—who, with the requisite intent, also commits fraud—does. At minimum, those debts would not be dischargeable under §523(a)(2)(A). Finally, reading the phrase "actual fraud" to restrict, rather than expand, the discharge exception's reach would untenably require reading the disjunctive "or" in the phrase "false pretenses, a false representation, or actual fraud" to mean "by." Pp. 7–10.

787 F. 3d 312, reversed and remanded.

SOTOMAYOR, J., delivered the opinion of the Court, in which ROBERTS, C. J., and KENNEDY, GINSBURG, BREYER, ALITO, and KAGAN, JJ., joined. THOMAS, J., filed a dissenting opinion.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–145

_____

## HUSKY INTERNATIONAL ELECTRONICS, INC., PETITIONER *v.* DANIEL LEE RITZ, JR.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[May 16, 2016]

JUSTICE SOTOMAYOR delivered the opinion of the Court.

The Bankruptcy Code prohibits debtors from discharging debts "obtained by . . . false pretenses, a false representation, or actual fraud." 11 U. S. C. §523(a)(2)(A). The Fifth Circuit held that a debt is "obtained by . . . actual fraud" only if the debtor's fraud involves a false representation to a creditor. That ruling deepened an existing split among the Circuits over whether "actual fraud" requires a false representation or whether it encompasses other traditional forms of fraud that can be accomplished without a false representation, such as a fraudulent conveyance of property made to evade payment to creditors. We granted certiorari to resolve that split and now reverse.

## I

Husky International Electronics, Inc., is a Colorado-based supplier of components used in electronic devices. Between 2003 and 2007, Husky sold its products to Chrysalis Manufacturing Corp., and Chrysalis incurred a debt to Husky of $163,999.38. During the same period, respondent Daniel Lee Ritz, Jr., served as a director of

Chrysalis and owned at least 30% of Chrysalis' common stock.

All parties agree that between 2006 and 2007, Ritz drained Chrysalis of assets it could have used to pay its debts to creditors like Husky by transferring large sums of Chrysalis' funds to other entities Ritz controlled. For instance—and Ritz' actions were by no means limited to these examples—Ritz transferred $52,600 to CapNet Risk Management, Inc., a company he owned in full; $121,831 to CapNet Securities Corp., a company in which he owned an 85% interest; and $99,386.90 to Dynalyst Manufacturing Corp., a company in which he owned a 25% interest.

In May 2009, Husky filed a lawsuit against Ritz seeking to hold him personally responsible for Chrysalis' $163,999.38 debt. Husky argued that Ritz' intercompany-transfer scheme was "actual fraud" for purposes of a Texas law that allows creditors to hold shareholders responsible for corporate debt. See Tex. Bus. Orgs. Code Ann. §21.223(b) (West 2012). In December 2009, Ritz filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of Texas. Husky then initiated an adversarial proceeding in Ritz' bankruptcy case again seeking to hold Ritz personally liable for Chrysalis' debt. Husky also contended that Ritz could not discharge that debt in bankruptcy because the same inter-company-transfer scheme constituted "actual fraud" under 11 U. S. C. §523(a)(2)(A)'s exemption to discharge.[1]

The District Court held that Ritz was personally liable for the debt under Texas law, but that the debt was not "obtained by . . . actual fraud" under §523(a)(2)(A) and could be discharged in his bankruptcy.

————————

[1] Husky also alleged that Ritz' debt should be exempted from discharge under two other exceptions, see 11 U. S. C. §523(a)(4) (excepting debts for fraud "while acting in a fiduciary capacity"); §523(a)(6) (excepting debts for "willful and malicious injury"), but does not press those claims in this petition.

The Fifth Circuit affirmed. It did not address whether Ritz was responsible for Chrysalis' debt under Texas law because it agreed with the District Court that Ritz did not commit "actual fraud" under §523(a)(2)(A). Before the Fifth Circuit, Husky argued that Ritz' asset-transfer scheme was effectuated through a series of fraudulent conveyances—or transfers intended to obstruct the collection of debt. And, Husky said, such transfers are a recognizable form of "actual fraud." The Fifth Circuit disagreed, holding that a necessary element of "actual fraud" is a misrepresentation from the debtor to the creditor, as when a person applying for credit adds an extra zero to her income or falsifies her employment history. *In re Ritz*, 787 F. 3d 312, 316 (2015). In transferring Chrysalis' assets, Ritz may have hindered Husky's ability to recover its debt, but the Fifth Circuit found that he did not make any false representations to Husky regarding those assets or the transfers and therefore did not commit "actual fraud."

We reverse. The term "actual fraud" in §523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation.

## II
### A

Before 1978, the Bankruptcy Code prohibited debtors from discharging debts obtained by "false pretenses or false representations." §35(a)(2) (1976 ed.). In the Bankruptcy Reform Act of 1978, Congress added "actual fraud" to that list. 92 Stat. 2590. The prohibition now reads: "A discharge under [Chapters 7, 11, 12, or 13] of this title does not discharge an individual debtor from any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud."

§523(a)(2)(A) (2012 ed.).

When "'Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.'" *United States* v. *Quality Stores, Inc.*, 572 U. S. ___, ___ (2014) (slip op., at 7). It is therefore sensible to start with the presumption that Congress did not intend "actual fraud" to mean the same thing as "a false representation," as the Fifth Circuit's holding suggests. But the historical meaning of "actual fraud" provides even stronger evidence that the phrase has long encompassed the kind of conduct alleged to have occurred here: a transfer scheme designed to hinder the collection of debt.

This Court has historically construed the terms in §523(a)(2)(A) to contain the "elements that the common law has defined them to include." *Field* v. *Mans*, 516 U. S. 59, 69 (1995). "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involv[es] moral turpitude or intentional wrong." *Neal* v. *Clark*, 95 U. S. 704, 709 (1878). "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." *Ibid.* Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

Although "fraud" connotes deception or trickery generally, the term is difficult to define more precisely. See 1 J. Story, Commentaries on Equity Jurisprudence §189, p. 221 (6th ed. 1853) (Story) ("Fraud . . . being so various in its nature, and so extensive in its application to human concerns, it would be difficult to enumerate all the instances in which Courts of Equity will grant relief under this head"). There is no need to adopt a definition for all times and all circumstances here because, from the beginning of English bankruptcy practice, courts and legislatures have used the term "fraud" to describe a debtor's

transfer of assets that, like Ritz' scheme, impairs a creditor's ability to collect the debt.

One of the first bankruptcy acts, the Statute of 13 Elizabeth, has long been relied upon as a restatement of the law of so-called fraudulent conveyances (also known as "fraudulent transfers" or "fraudulent alienations"). See generally G. Glenn, The Law of Fraudulent Conveyances 89–92 (1931). That statute, also called the Fraudulent Conveyances Act of 1571, identified as fraud "faigned covenous and fraudulent Feoffmentes Gyftes Graᵘuntes Alienations [and] Conveyaunces" made with "Intent to delaye hynder or defraude Creditors." 13 Eliz. ch. 5. In modern terms, Parliament made it fraudulent to hide assets from creditors by giving them to one's family, friends, or associates. The principles of the Statute of 13 Elizabeth—and even some of its language—continue to be in wide use today. See *BFP* v. *Resolution Trust Corporation*, 511 U. S. 531, 540 (1994) ("The modern law of fraudulent transfers had its origin in the Statute of 13 Elizabeth"); *id.*, at 541 ("Every American bankruptcy law has incorporated a fraudulent transfer provision"); Story §353, at 393 ("[T]he statute of 13 Elizabeth . . . has been universally adopted in America, as the basis of our jurisprudence on the same subject"); *Boston Trading Group, Inc.* v. *Burnazos*, 835 F. 2d 1504, 1505–1506 (CA1 1987) (Breyer, J.) ("Mass. Gen. Laws ch. 109A, §§1–13 . . . is a uniform state law that codifies both common and statutory law stretching back at least to 1571 and the Statute of Elizabeth"). The degree to which this statute remains embedded in laws related to fraud today clarifies that the common-law term "actual fraud" is broad enough to incorporate a fraudulent conveyance.

Equally important, the common law also indicates that fraudulent conveyances, although a "fraud," do not require a misrepresentation from a debtor to a creditor. As a basic point, fraudulent conveyances are not an inducement-

based fraud. Fraudulent conveyances typically involve "a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration." *BFP*, 511 U. S., at 540–541 (citing *Twyne's Case*, 3 Co. Rep. 80b, 76 Eng. Rep. 809 (K. B. 1601)); O. Bump, Fraudulent Conveyances: A Treatise Upon Conveyances Made by Debtors To Defraud Creditors 31–60 (3d ed. 1882)). In such cases, the fraudulent conduct is not in dishonestly inducing a creditor to extend a debt. It is in the acts of concealment and hindrance. In the fraudulent-conveyance context, therefore, the opportunities for a false representation from the debtor to the creditor are limited. The debtor may have the opportunity to put forward a false representation if the creditor inquires into the whereabouts of the debtor's assets, but that could hardly be considered a defining feature of this kind of fraud.

Relatedly, under the Statute of 13 Elizabeth and the laws that followed, both the debtor and the recipient of the conveyed assets were liable for fraud even though the recipient of a fraudulent conveyance of course made no representation, true or false, to the debtor's creditor. The famous *Twyne's Case*, which this Court relied upon in *BFP*, illustrates this point. See *Twyne's Case*, 76 Eng. Rep., at 823 (convicting Twyne of fraud under the Statute of 13 Elizabeth, even though he was the recipient of a debtor's conveyance). That principle underlies the now-common understanding that a "conveyance which hinders, delays or defrauds creditors shall be void as against [the recipient] unless . . . th[at] party . . . received it in good faith and for consideration." Glenn, Law of Fraudulent Conveyances §233, at 312. That principle also under-scores the point that a false representation has never been a required element of "actual fraud," and we decline to adopt it as one today.

## B

Ritz concedes that fraudulent conveyances are a form of "actual fraud,"[2] but contends that 11 U. S. C. §523(a)(2)(A)'s particular use of the phrase means something else. Ritz' strained reading of the provision finds little support.

First, Ritz contends that interpreting "actual fraud" in §523(a)(2)(A) to encompass fraudulent conveyances would render duplicative two other exceptions to discharge in §523. Section 523(a)(4) exempts from discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." And §523(a)(6) exempts "any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."

Ritz makes the unremarkable point that the traditional definition of "actual fraud" will cover some of the same conduct as those exceptions: for example, a trustee who fraudulently conveys away his trust's assets. But Ritz' interpretation does not avoid duplication, nor does our interpretation fail to preserve a meaningful difference between §523(a)(2)(A) and §§523(a)(4), (6). Just as a fiduciary who engages in a fraudulent conveyance may find his debt exempted from discharge under either §523(a)(2)(A) or §523(a)(4), so too would a fiduciary who engages in one of the fraudulent misrepresentations that form the core of Ritz' preferred interpretation of §523(a)(2)(A). The same is true for §523(a)(6). The debtors who commit fraudulent conveyances *and* the debtors who make false representations under §523(a)(2)(A) could likewise also inflict "willful and malicious injury" under

———————

[2] See Tr. of Oral Arg. 30 (JUSTICE KAGAN: "[Y]ou're not contesting that fraudulent conveyance is a form of actual fraud; is that right?" Ms. Murphy: "[Y]es, that's right"); *id.,* at 27 (Ms. Murphy: "[T]o be clear, we don't dispute that fraudulent conveyance is a form of actual fraud").

§523(a)(6). There is, in short, overlap, but that overlap appears inevitable.

And, of course, our interpretation of "actual fraud" in §523(a)(2)(A) also preserves meaningful distinctions between that provision and §§523(a)(4), (a)(6). Section 523(a)(4), for instance, covers only debts for fraud while acting as a fiduciary, whereas §523(a)(2)(A) has no similar limitation. Nothing in our interpretation alters that distinction. And §523(a)(6) covers debts "for willful and malicious injury," whether or not that injury is the result of fraud, see *Kawaauhau* v. *Geiger*, 523 U. S. 57, 61 (1998) (discussing injuries resulting from "'intentional torts'"), whereas §523(a)(2)(A) covers only fraudulent acts. Nothing in our interpretation alters that distinction either. Thus, given the clear differences between these provisions, we see no reason to craft an artificial definition of "actual fraud" merely to avoid narrow redundancies in §523 that appear unavoidable.

Ritz also says that our interpretation creates redundancy with a separate section of the Bankruptcy Code, §727(a)(2), which prevents a debtor from discharging all of his debts if, within the year preceding the bankruptcy petition, he "transferred, removed, destroyed, mutilated, or concealed" property "with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property." Although the two provisions could cover some of the same conduct, they are meaningfully different. Section 727(a)(2) is broader than §523(a)(2)(A) in scope—preventing an offending debtor from discharging all debt in bankruptcy. But it is narrower than §523(a)(2)(A) in timing—applying only if the debtor fraudulently conveys assets in the year preceding the bankruptcy filing. In short, while §727(a)(2) is a blunt remedy for actions that hinder the entire bankruptcy process, §523(a)(2)(A) is a tailored remedy for behavior connected to specific debts.

Ritz' next point of resistance rests on §523(a)(2)(A)'s requirement that the relevant debt be "for money, property, services, or . . . credit . . . *obtained by* . . . actual fraud." (Emphasis added.) The argument, which the dissent also emphasizes, has two parts: First, it posits that fraudulent conveyances (unlike other forms of actual fraud) cannot be used to "obtai[n]" debt because they function instead to hide valuables that a debtor already possesses. Brief for Respondent 20, 31. There is, the dissent says, no debt at the end of a fraudulent conveyance that could be said to "'resul[t] from'" or be "'traceable to'" the fraud. *Post,* at 3 (quoting *Field*, 516 U. S., at 61, 64). Second, it urges that "actual fraud" not be interpreted to encompass forms of fraud that are incompatible with the provision's "obtained by" requirement.

It is of course true that the transferor does not "obtai[n]" debts in a fraudulent conveyance. But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtai[n]" assets "by" his or her participation in the fraud. See, *e.g.*, *McClellan* v. *Cantrell*, 217 F. 3d 890 (CA 7 2000); see also *supra,* at 6. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance, see *Field,* 516 U. S., at 61; *post,* at 3, will be nondischargable under §523(a)(2)(A). Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under §523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy,[3] but they make clear that fraudulent conveyances are not

---

[3] Ritz' situation may be unusual in this regard because Husky contends that Ritz was both the transferor and the transferee in his fraudulent conveyance scheme, having transferred Chrysalis assets to other companies he controlled. We take no position on that contention here and leave it to the Fifth Circuit to decide on remand whether the debt to Husky was "obtained by" Ritz' asset-transfer scheme.

wholly incompatible with the "obtained by" requirement.

The dissent presses further still, contending that the phrase "obtained by . . . actual fraud" requires not only that the relevant debts "resul[t] from" or be "traceable to" fraud but also that they "result from fraud *at the inception of a credit transaction.*" *Post*, at 3 (emphasis added). Nothing in the text of §523(a)(2)(A) supports that additional requirement. The dissent bases its conclusion on this Court's opinion in *Field*, in which the Court noted that certain forms of bankruptcy fraud require a degree of direct reliance by a creditor on an action taken by a debtor. But *Field* discussed such "reliance" only in setting forth the requirements of the form of fraud alleged in that case—namely, fraud perpetrated through a misrepresentation to a creditor. See 516 U. S., at 61. The Court was not establishing a "reliance" requirement for frauds that are not premised on such a misrepresentation.

Finally, Ritz argues that Congress added the phrase "actual fraud" to §523(a)(2)(A) not to expand the exception's reach, but to restrict it. In Ritz' view, "actual fraud" was inserted as the last item in a disjunctive list—"false pretenses, a false representation, *or* actual fraud"—in order to make clear that the "false pretenses" and "false representation[s]" covered by the provision needed to be intentional. Brief for Respondent 29–31. Ritz asks us, in other words, to ignore what he believes is Congress' "imprudent use of the word 'or,'" *id.*, at 32, and read the final item in the list to modify and limit the others. In essence, he asks us to change the word "or" to "by." That is an argument that defeats itself. We can think of no other example, nor could petitioner point to any at oral argument, in which this Court has attempted such an unusual statutory modification.

\*     \*     \*

Because we must give the phrase "actual fraud" in

Opinion of the Court

§523(a)(2)(A) the meaning it has long held, we interpret "actual fraud" to encompass fraudulent conveyance schemes, even when those schemes do not involve a false representation. We therefore reverse the judgment of the Fifth Circuit and remand the case for further proceedings consistent with this opinion.

*So ordered.*

# SUPREME COURT OF THE UNITED STATES

_____

No. 15–145

_____

## HUSKY INTERNATIONAL ELECTRONICS, INC., PETITIONER *v.* DANIEL LEE RITZ, JR.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[May 16, 2016]

JUSTICE THOMAS, dissenting.

The Bankruptcy Code exempts from discharge "any debt . . . for money, property, [or] services . . . *to the extent obtained by* . . . false pretenses, a false representation, or actual fraud."  11 U. S. C. §523(a)(2)(A) (emphasis added). The Court holds that "actual fraud" encompasses fraudulent transfer schemes effectuated without any false representation to a creditor and concludes that a debt for goods may "sometimes" be "obtained by" a fraudulent transfer scheme.  *Ante*, at 3, 9.  Because §523(a)(2)(A) does not apply so expansively, I respectfully dissent.

I

In my view, "actual fraud" within the meaning of §523(a)(2) does not encompass fraudulent transfer schemes.  There are two types of fraudulent transfer schemes: "transfers made with actual intent to hinder, delay, or defraud creditors, referred to as actual fraudulent transfers" and "transfers made for less than reasonably equivalent value when a debtor was in financial trouble, [which is] referred to as constructive fraudulent transfers."  2 Bankruptcy Law Manual §9A:29, p. 333 (5th ed. 2015).  I do not quibble with the majority's conclusion that the *common-law* definition of "actual fraud" included fraudulent transfers.  *Ante*, at 4–6.  And I agree that,

generally, we should give a common-law term of art its established common-law meaning. *Ante*, at 4. Nevertheless, the "general rule that a common-law term of art should be given its established common-law meaning" gives way "where that meaning does not fit." *United States* v. *Castleman*, 572 U. S. ___, ___ (2014) (slip op., at 5) (internal quotation marks omitted). Ultimately, "[s]tatutory language must be read in context and a phrase gathers meaning from the words around it." *Jones* v. *United States*, 527 U. S. 373, 389 (1999) (internal quotation marks omitted). In my view, context dictates that "actual fraud" ordinarily does not include fraudulent transfers because "that meaning does not fit" with the rest of §523(a)(2). *Castleman*, *supra,* at ___ (slip op., at 5) (internal quotation marks omitted).

Section 523(a)(2) covers only situations in which "money, property, [or] services" are "obtained by . . . actual fraud," and results in a debt. See *Cohen* v. *de la Cruz*, 523 U. S. 213, 218 (1998). The statutory phrase "obtained by" is an important limitation on the reach of the provision. Section 523(a)(2)(A) applies only when the fraudulent conduct occurs at the *inception of the debt*, *i.e.,* when the debtor commits a fraudulent act to induce the creditor to part with his money, property, services, or credit. The logical conclusion then is that "actual fraud"—as it is used in the statute—covers only those situations in which some sort of fraudulent conduct caused the creditor to enter into a transaction with the debtor. A fraudulent transfer generally does not fit that mold, unless, perhaps, the fraudulent transferor and the fraudulent transferee conspired to fraudulently drain the assets of the creditor. But the fraudulent transfer here, like all but the rarest fraudulent transfers, did not trick the creditor into selling his goods to the buyer, Chrysalis Manufacturing Corporation. It follows that the goods that resulted in the debt here were not "obtained by" actual fraud. §523(a)(2)(A).

A

I reach this conclusion based on the plain meaning of the phrase "obtained by," which has an "inherent" "element of causation," and refers to those debts "resulting from" or "traceable to" fraud. *Field* v. *Mans*, 516 U. S. 59, 61, 64, 66 (1995). As I have stated, "in order for a creditor to establish that a debt is not dischargeable, he must demonstrate that there is a causal nexus between the fraud and the debt." *Archer* v. *Warner*, 538 U. S. 314, 325 (2003) (THOMAS, J., dissenting) (relying on *Field, supra,* at 61, 64, and *Cohen, supra,* at 218). There is also "[n]o . . . doub[t] that some degree of reliance is required to satisfy th[is] element of causation." *Field,* 516 U. S., at 66. The upshot of the phrase "obtained by" is that §523(a)(2) covers only those debts that result from fraud at the inception of a credit transaction. Such a debt caused by fraud necessarily "*follows* a transfer of value or extension of credit induced by falsity or fraud." *Ibid.* (emphasis added).

Bankruptcy treatises confirm that "[t]he phrase 'to the extent obtained by' is properly read as meaning 'obtained from' the creditor." 3 W. Norton & W. Norton, Bankruptcy Law and Practice §57:15, p. 57–35 (3d ed. 2015). The "term 'by' refers to the manner in which such money, property, services is obtained and the creditor defrauded." *Ibid.* According to Collier on Bankruptcy, to invoke §523(a)(2)(A) based on "actual fraud," a creditor "must establish" that he "justifiably relied" on the debtor's "representation," which the debtor "knew to be false" and made "with the intent and purpose of deceiving the" creditor and that the creditor "sustained a loss or damage as the proximate consequence." 4 Collier on Bankruptcy ¶523.08[1][e], p. 523–47 (A. Resnick & H. Sommer eds., 16th ed. 2015). Norton Bankruptcy Law and Practice is in accord: Section 523(a)(2)(A) requires a "misrepresentation," "knowledge of falsity," "intent to defraud," "justifiable reliance," and "resulting damage." 3 Norton, *supra,*

§57:15, at 57–33 to 57–34.

B

Applying those principles here, Husky cannot invoke §523(a)(2)(A) to except the debt owed to it from discharge because, ordinarily, it would be nonsensical to say that a fraudulent transfer created the debt at issue. As the majority notes, the debt at issue did not originate from any transaction between Ritz and Husky. *Ante*, at 1–2. Instead, Husky sold goods to Chrysalis, a company that Ritz financially controlled. *Ibid.* In turn, Chrysalis—not Ritz—incurred a debt to Husky of $163,999.38 for the goods. *Ante*, at 1. As the Bankruptcy Court found, there is no evidence that Ritz made "any oral or written representations to Husky inducing Husky to enter into a contract with Chrysalis." *In re Ritz*, 459 B. R. 623, 628 (SD Tex. 2011). In fact, the only communication between Ritz and Husky occurred after Husky and Chrysalis entered into the contract and after Husky had shipped the goods to Chrysalis. *Ibid.* The Bankruptcy Court also found that there was no evidence that Ritz transferred the funds to avoid Chrysalis' obligations to pay the debt it owed to Husky—an unsecured creditor. *Id.,* at 635. Because Husky does not contend that Ritz fraudulently induced it to sell goods to Chrysalis and cannot show that the constructive fraudulent conveyance had anything to do with its decision to contract with Chrysalis, Husky has not established that §523(a)(2)(a) covers any debt owed to it.

II

The majority reaches the opposite conclusion and holds that §523(a)(2) may prevent an individual debtor from obtaining a discharge even if (1) the debtor makes no false representation to the creditor, (2) the creditor does not rely on any of the debtor's actions or inactions, and (3) there was no actual fraudulent conveyance at the

inception of the credit transaction between the creditor and the debtor. *Ante*, at 5–6, 9.  It does so by giving new meaning to the phrase "obtained by" in cases involving fraudulent transfers, disregarding our case law, and second-guessing Congress' choices. *Ante*, at 9.

The majority admits that a transferor "does not 'obtai[n]' debts in a fraudulent conveyance," but contends that "the recipient of the transfer—who, with the requisite intent, also commits fraud—can 'obtain' assets 'by' his or her participation in the fraud." *Ibid.* (brackets omitted).  "If that recipient later files for bankruptcy, any debts traceable to the fraudulent conveyance," the majority states, "will be nondischargable under §523(a)(2)(A)." *Ibid.* (internal quotation marks omitted).  The majority thus holds that "at least sometimes a debt 'obtained by' a fraudulent conveyance scheme could be nondischargeable under §523(a)(2)(A)." *Ibid.*  But §523(a)(2)(A) does not exempt from discharge any debts "traceable to the fraudulent conveyance."  Instead, §523(a)(2)(A) exempts from discharge "any debt for" goods that are "obtained by" actual fraud.  And, as explained, it is extremely rare that a creditor will use an actual fraudulent transfer scheme to induce a creditor to depart with property, services, money, or credit.  See *supra*, at 2–3.

In reaching its conclusion, the majority also disregards this Court's precedents interpreting §523(a)(2)(A), presumably because those cases did not involve fraudulent transfers.  The majority cites *Field* only for the elemental proposition that this Court "has historically construed the terms in §523(a)(2)(A) to contain the 'elements that the common law has defined them to include.'" *Ante*, at 4 (quoting 516 U. S., at 69).  The majority omits *Field*'s conclusion that one of the elements of "actual fraud" in §523(a)(2)(A) is "*reliance*" on some sort of false statement, misrepresentation, or omission.  *Id.*, at 70 (emphasis added).  To be sure, like the rest of our cases interpreting

§523(a)(2)(A), *Field* involves a false statement. But that factual distinction is immaterial. Cases like *Field*—which interpret the phrase "obtained by"—are as relevant in cases that involve false statements and misrepresentations as they are in a case like this one. After all, "obtained by" modifies false pretenses, false representations, and actual fraud in §523(a)(2)(A). And in no case has this Court suggested—never mind held—that §523(a)(2)(A) may apply to circumstances in which there was no false statement, misrepresentation, or omission when the debt was first obtained.

The majority ostensibly creates a new definition of "obtained by" because it thinks that this move is necessary to avoid rendering "actual fraud" superfluous. See *ante,* at 4, 7–8. Not so. Actual fraud is broader than false pretenses or false representations, and "consists of any deceit, artifice, trick, or design involving direct and active operation of the mind, used to circumvent and cheat another." 4 Collier on Bankruptcy ¶523.08[1][e], at 523–46. "Unlike false pretenses or false representation, actual fraud, within the meaning of the dischargeability exception, can focus on a promise of future performance made with intent not to perform." 2F Bankruptcy Service §27:211, p. 59 (Supp. Jan. 2016). In this way, "the actual fraud" exception "permit[s] the courts to except from discharge debts incurred without intent to repay, or by use of other false implied representations, without the need to stretch the false pretenses and false representations language." Zaretsky, The Fraud Exception to Discharge Under the New Bankruptcy Code, 53 Am. Bankruptcy L. J. 253, 257 (1979). Some courts, for example, have held that "a debtor commits actual fraud within the meaning of §523(a)(2)(A) when he incurs credit card debt with no actual, subjective intent to repay it," but has not made an affirmatively false representation or engaged in false pretense. *In re Morrow*, 488 B. R. 471, 479–480 (Bkrtcy. Ct. ND Ga. 2012); see

also, *e.g., In re Alam*, 314 B. R. 834, 841 (Bkrtcy. Ct. ND Ga. 2004). Defining actual fraud this way does not render that term superfluous and—unlike the majority's definition—does not render "obtained by" a nullity.

Regardless, even if there is some overlap between the definitions of "false pretenses," "false representations," and "actual fraud," "[r]edundancies across statutes are not unusual events in drafting." *Connecticut Nat. Bank* v. *Germain*, 503 U. S. 249, 253 (1992). "[T]he canon against surplusage assists only where a competing interpretation gives effect to every clause and word of a statute." *Marx* v. *General Revenue Corp.*, 568 U. S. \_\_\_, \_\_\_ (2013) (slip op., at 13) (internal quotation marks omitted). "But, in this case, no interpretation of [§523(a)(2)(A)] gives effect to every word." *Ibid.* Under either my reading or the majority's reading, "actual fraud" is broader than and subsumes "false pretenses" and "false representations." Accordingly, that "actual fraud" may introduce some redundancy in the statute is not dispositive.

At bottom, the majority's attempt to broaden §523(a)(2)(A) to cover fraudulent transfers impermissibly second-guesses Congress' choices. When Congress wants to stop a debtor from discharging a debt that he has concealed through a fraudulent transfer scheme, it ordinarily says so. See §727(a)(2) (stating that a court shall grant the debtor a discharge unless the debtor engages in an actual fraudulent transfer scheme within a certain time of filing a bankruptcy petition). If Congress wanted §523(a)(2)(A) to cover fraudulent transfer situations, "it would have spoken more clearly to that effect." *Staples* v. *United States*, 511 U. S. 600, 620 (1994). Ultimately, "it is not for us to substitute our view of policy for the legislation which has been passed by Congress." *Florida Dept. of Revenue* v. *Piccadilly Cafeterias, Inc.*, 554 U. S. 33, 52 (2008) (ellipsis and internal quotation marks omitted).

THOMAS, J., dissenting

\* \* \*

The majority today departs from the plain language of §523(a)(2)(A), as interpreted by our precedents. Because I find no support for the Court's conclusion in the text of the Bankruptcy Code, I respectfully dissent.